2022 IL App (1st) 210653

SECOND DIVISION
December 6, 2022

No. 1-21-0653

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| JAMES REDMOND, Individually and as Independent Administrator of the Estate of Carl Redmond Sr., Deceased, | ) ) ) ) | |
| | ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | 19 L 7431 |
| | ) | |
| JACQUELINE GALVAN, M.D.; JARNA SHAH, M.D.; JESSICA E. KUPPY, M.D.; and OTHER UNKNOWN PARTIES (JOHN DOES 1-10 AND ROE CORPORATIONS 1-10), | ) ) ) ) | Honorable Melissa A. Durkin, Judge Presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     After his father was allegedly wrongfully resuscitated by doctors, despite having

provided the hospital with a do-not-resuscitate order, plaintiff, both individually and as

representative of his father's estate, sued the University of Illinois & Health Sciences System

(the Hospital) in the circuit court of Cook County. The Hospital successfully argued that the

circuit court lacked jurisdiction—that as a state entity, the Hospital could only be sued in the

Illinois Court of Claims. At that point, plaintiff sought leave to amend the complaint to name the

individual doctors involved in the incident. At the time plaintiff sought to leave to amend, the two-year limitations period for medical malpractice actions had already expired. See 735 ILCS 5/13-212 (West 2020).

¶ 2 The doctors moved to dismiss, arguing that the relation-back provision of section 2-616 of the Code of Civil Procedure (*id.* § 2-616(d)) did not save their untimely addition to the suit. The circuit court agreed and dismissed the claims against the individual doctors.

¶ 3 We affirm, as the doctors' exclusion from the initial complaint was not a "mistake" within the meaning of section 2-616(d). As such, the claims against them do not relate back to the initial complaint and are barred by the two-year limitations period.

¶ 4                                    BACKGROUND

¶ 5 On August 4, 2017, Carl Redmond was hospitalized at Kindred Hospital in Chicago. The same day, he signed a Uniform Do Not Resuscitate Advance Directive (DNR). On August 9, Carl was transferred to defendant here, the Hospital, to receive treatment from his oncologist. Carl's DNR was transferred to the Hospital with his medical records.

¶ 6 The next day, August 10, just before midnight, the Hospital's staff resuscitated Carl despite the DNR. Over the next couple of days, Carl remained on life support. On August 15, he was removed from life support and passed away.

¶ 7 On July 8, 2019, a month before the two-year limitations period expired, plaintiff—Carl's son and the administrator of his estate—filed suit against the Hospital "and other unknown parties" for medical battery, infliction of emotional distress, and invasion of privacy. The initial complaint did not name the individual doctors—Drs. Galvan, Shah, and Kuppy—as defendants.

¶ 8 The complaint did, however, mention these doctors. For example: "The Decedent's medical records indicate multiple staff and physicians were involved in the battery including, but

not limited to, Drs. Jama Shah, Jacqueline Galvan, Jessica Kuppy and Sarang Thaker."

Elsewhere, the original complaint alleged that "[plaintiff] spoke with Jessica Kuppy, M.D. (Rapid Response Team) and she informed him that this resuscitation was not suppose [sic] to happen, as she was surprised to hear the Decedent had a Do-Not-Resuscitate (DNR) Advance Directive on file."

¶ 9     The original complaint also alleged that the Hospital was vicariously liable for the actions of its doctors. Count I alleged that the Hospital "can be held vicariously liable for intentional tort of medical battery, where, under the guise of apparent authority, their [sic] agent(s) commit an intentional tort while furthering and financial benefiting the business of the principal." Count II alleged that the Hospital "and its staff were acting within the scope of their employment and financially benefited the Defendant."

¶ 10     Finally, the original complaint included a certificate of merit and a written physician's report, as required by state law. This report concluded that plaintiff had a meritorious claim against the Hospital. It specifically noted that "Records indicate multiple staff and physicians were involved in the battery including but not limited to Drs. Jama Shah, Jacqueline Galvan, Jessica Kuppy, and Sarang Thaker."

¶ 11     The Hospital, originally the sole defendant, moved to dismiss because, as a government entity, the Court of Claims has exclusive jurisdiction over it. Instead of contesting the motion to dismiss, plaintiff sought leave "to remove the University of Illinois & Health Science System as a Defendant pursuant to 735 ILCS 5/2-619(a)(9) and replace the named Defendant with the names [sic] the physicians who were allegedly responsible for the cause action [sic] (John Does 1-2)."

¶ 12     The circuit court granted the Hospital's motion to dismiss and allowed plaintiff to file the

3

"amended complaint naming doctors individually by 11/14/19."

¶ 13    On October 29, 2019, plaintiff filed the first amended complaint, naming Drs. Galvan and Shah as defendants. This first amended complaint was supported by the same physician's report as the initial complaint. Without serving the doctors, in April 2020, plaintiff filed his second amended complaint, naming Dr. Kuppy in addition to Drs. Galvan and Shah. Again, this complaint was supported by the initial physician's report.

¶ 14    In May 2020, plaintiff served the three doctors. That same month, the same law firm that represented the Hospital appeared on behalf of the individual doctors. The doctors then filed two separate motions to dismiss. In the first, they moved to dismiss for failure to state a claim. In the second, they argued that the statute of limitations barred the action against them. See *id.* § 2-615 (dismissal for failure to state claim); *id.* § 2-619(a)(5) (dismissal based on untimeliness).

¶ 15    After a round of dismissals and repleading, plaintiff filed his fifth amended complaint, again naming these three doctors individually as defendants. The doctors renewed their motion for dismissal based on untimeliness, among other reasons. Plaintiff again responded that the claims against the individual doctors related back to the timely-filed original complaint.

¶ 16    The court dismissed the fifth amended complaint with prejudice as time-barred. The claims against the doctors were obviously filed after the two-year limitations period, and the circuit court agreed with the doctors that plaintiff could not satisfy the second prong of the relation-back statute. See *id.* § 2-616(d). Specifically, the court found that plaintiff did not make a mistake of identity in failing to name the doctors originally as defendants. Rather, the court found, the allegations in the original complaint demonstrated that plaintiff was fully aware of each of the doctors and the roles they performed in his father's resuscitation; thus, the decision not to sue the doctors individually was a conscious choice, not any kind of "mistake" recognized

4

in the relation-back statute. As the relation-back doctrine was inapplicable, the claims against the individual doctors were time-barred. This timely appeal followed.

¶ 17                                    ANALYSIS

¶ 18     Before this court, plaintiff raises two bases for reversal. First, he claims the circuit court erred in "reconsidering" an earlier judge's order that allowed plaintiff to name the individual doctors in the amended complaint. Second, he argues that his claims against the doctors, though made after the expiration of the limitations period, relate back to the original, timely-filed complaint.

¶ 19                                        I

¶ 20     We can briefly dispose of the first argument, that the second circuit judge erred by "overturn[ing]" the original judge's ruling "on the same issue with no change of facts or circumstances." For one thing, the original judge's order was not a ruling on the merits of this argument. The court simply allowed plaintiff to file the amended complaint naming the individual doctors. The court heard no substantive argument on the timeliness issue; indeed, the parties entitled to raise that argument by way of a motion to dismiss—the doctors—obviously had not yet been made a part of the lawsuit.

¶ 21     And second, even if the original circuit judge's ruling allowing leave to add the individual doctors were considered a ruling on the merits (it surely is not), nothing stopped the second circuit judge from ruling differently on the merits. An order granting leave to amend a complaint is obviously not a final and appealable judgment but, rather, an interlocutory order. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 25. A circuit court may reconsider an interlocutory order at any time before final judgment and modify it or vacate it altogether. *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 42.

¶ 22    So the mere fact that the second circuit judge ruled differently than the earlier judge—if we could even characterize it as "ruling differently"—is not error of any kind.

¶ 23                                              II

¶ 24    That brings us to the second argument—that, though the claims against the doctors were filed after the two-year limitations period, the trial court erred by refusing to relate the claims against the individual doctors back to the original complaint, pursuant to section 2-616(d) of the Code of Civil Procedure. See 735 ILCS 5/2-616(d) (West 2020). Our review is *de novo*. *McCarthy v. Omega Psi Phi Fraternity, Inc.*, 2011 IL App (1st) 092950, ¶ 26.

¶ 25    Under the relation-back statute, a claim against a person not originally named as a defendant, who is first sued after the limitations period for filing the claim has expired, will not be deemed time-barred if all of the following criteria are met: (1) the original complaint was, itself, timely filed, (2) within the limitations period plus the time for service of process, (a) the newly-added defendant had notice of the lawsuit, such that she will not be prejudiced in defending herself post-limitation period and (b) the newly-added defendant "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her," and (3) the claims against the newly-added defendant arise out of the same transaction or occurrence as the claims in the initial complaint. 735 ILCS 5/2-616(d) (West 2020).

¶ 26    Only the second prong is at issue here; the doctors concede that plaintiff's amendment would satisfy the first and third prongs, so we need not discuss them further. Though the second prong is listed as one of three prongs in section 2-616, in fact the second prong consists of two distinct elements—that the newly-added defendant knew of the lawsuit within the limitations period (plus the time for service) and that, within this same time period, the newly-added

defendant either knew or should have known that the reason she was not named as a defendant originally was due to a mistake of identity as to the proper party. See *id.* Indeed, the federal counterpart to our relation-back statute, Rule15(c) of the Federal Rules of Civil Procedure, after which our statute was patterned, likewise contains the two requirements found in our second prong but breaks them up into individual subparts. See Fed. R. Civ. P. 15(c)(1)(C)(i), (ii); *Maggi v. RAS Development, Inc.*, 2011 IL App (1st) 091955, ¶ 28 (noting that Illinois legislature amended section 2-616(d) to mirror Rule 15(c)).

¶ 27    Here, the doctors challenge both elements of our second prong; they claim a lack of notice, and they argue that they neither knew nor should have known that they were omitted as defendants originally because of a mistake by plaintiff concerning their identity as proper parties. Because plaintiff must satisfy both elements of this second prong to sustain her claim against the doctors, we may affirm the judgment below if plaintiff fails to satisfy either element. Indeed, we may affirm on any basis in the record, even if we do not adopt the circuit court's reasoning. *Masters v. Murphy*, 2020 IL App (1st) 190908, ¶ 9.

¶ 28    So we will focus on the second element of the second prong—namely, the requirement that the defendant knew or should have known that the reason she was not named as a defendant originally was due to the plaintiff's "mistake concerning the identity of the proper party." 735 ILCS 5/2-616(d) (West 2020).

¶ 29    Because of the substantial similarity between section 2-616(d) and Rule 15(c), we routinely rely on federal decisions when interpreting our statute. See, *e.g.*, *Zlatev v. Millette*, 2015 IL App (1st) 143173, ¶ 24. Reliance on federal law is particularly appropriate when considering the mistake-of-identity element, as our relation-back statute and Rule 15(c) are nearly identical in this respect. Compare 735 ILCS 5/2-616(d)(2) (West 2020) (requirement that

newly added defendant "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her"), with Fed. R. Civ. P. 15(c)(1)(C)(ii) (newly-added defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity").

¶ 30    Notably, whether the plaintiff made a mistake concerning the identity of the proper party is viewed from the *defendant's* perspective. The question is not whether the plaintiff, in fact, made such a mistake; what matters is "the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Krupski v. Costa Crociere S.P.A.*, 560 U.S. 538, 548 (2010); see *Zlatev*, 2015 IL App (1st) 143173, ¶ 37 (relevant question is "whether the prospective defendant was reasonable in concluding that the plaintiff had made a mistake when filing the initial complaint"). The reasoning is as follows:

> " 'A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity.' " *Zlatev*, 2015 IL App (1st) 143173, ¶ 32 (quoting *Krupski*, 560 U.S. at 550).

¶ 31    We look principally to the allegations in the original complaint to determine the defendant's understanding of plaintiff's state of mind when filing the original complaint. *Maggi*, 2011 IL App (1st) 091955, ¶ 24. On rare occasions, a plaintiff's conduct after the original complaint is filed (but still during the limitations period) may also inform a defendant's understanding of whether her omission from the original lawsuit was the result of mistake or conscious choice. *Krupski*, 560 U.S. at 554; *Leonard v. Parry*, 219 F.3d 25, 29 (1st Cir. 2000).

¶ 32    A "mistake concerning the identity of the proper party" can take more than one form. One example is a case of literal mistaken identity, "in which party A commits the alleged misconduct, but the plaintiff sues party B, not realizing that party A (the proper defendant) is a different person or entity, and does not discover the mistake until later." *Borchers v. Franciscan Tertiary Province of the Sacred Heart, Inc.*, 2011 IL App (2d) 101257, ¶ 43.

¶ 33    A fine example is *Krupski*, 560 U.S. at 541-42, where the plaintiff broke her leg while on a cruise ship and sued what she believed to be the cruise liner, Costa Cruise Lines, for negligence. Discovery and pleadings later revealed that this entity was merely the marketing agent of the actual cruise liner, Costa Crociere. *Id.* at 543-44. The Supreme Court held that plaintiff could relate her claims against Costa Crociere back to the original complaint, as Costa Crociere clearly knew of the lawsuit and obviously would have understood that the plaintiff had intended to sue the carrier, not the marketing agent, in her original suit. *Id.* at 548-49.

¶ 34    That is not our situation. This is not a case where plaintiff meant to sue the individual doctors but inadvertently sued the Hospital in a case of mistaken identity; plaintiff was obviously well aware of the difference, and the Hospital was a perfectly appropriate party to hold accountable—it was just one that, it so happened, could not be sued in circuit court because of its status as a State actor. The doctors, reviewing the original complaint, could not possibly have considered the situation to be one of literal mistaken identity.

¶ 35    Another example is when a plaintiff knows of the existence of a person but confuses that party's status or position with that of another person. As the Supreme Court in *Krupski* put it, "[a] plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B." *Id.* at 549. Say, for example, a plaintiff believes someone working in the hospital—Party A—was one of the attending physicians who

played a role in alleged malpractice, when in fact Party A is a human-resources employee who had no role at all in the medical care at issue. The plaintiff sues Party A, intending to sue the attending physician, and only later realizes that the attending physician is a different individual. The actual attending physician, if aware of the lawsuit, would clearly understand that she avoided being named as a defendant originally only because the plaintiff misunderstood a crucial fact about the identity of the attending physician.

¶ 36     That is not our situation, either. Again, the original complaint alleged that "multiple staff and *physicians* were involved in the [allegedly improper resuscitation] including but not limited to Drs. Jama Shah, Jacqueline Galvan, Jessica Kuppy"—the three doctors later named as defendants. Reading this complaint, the doctors could not have reasonably believed that the plaintiff did not understand that they were physicians.

¶ 37     The Supreme Court described a similar example in which the plaintiff may know both the identity *and* the status or position of the would-be defendant but not necessarily the *role* that this individual played in the events at issue in the lawsuit:

>        "[A] plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the 'conduct, transaction, or occurrence' giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a 'mistake concerning the proper party's identity' notwithstanding her knowledge of the existence of both parties." *Id.*

¶ 38     Plaintiff argues that this case falls within this scenario. The allegations of the original complaint, however, demonstrate that plaintiff knew not only of the existence of these three new defendants and their positions as doctors; plaintiff also knew the roles they played in the events at issue. As already noted, the original complaint alleged that these three doctors were involved

in the allegedly wrongful resuscitation that formed the nucleus of every claim raised in the original complaint.

¶ 39    Plaintiff argues, however, that, while he knew which doctors helped perform the resuscitation at the time he filed the complaint, "there is a lack of knowledge who *ordered* the resuscitation." (Emphasis added.) In his view, "[t]his is a classic case" of a plaintiff's "lack of knowledge as to [the] identity of the party who gave the order to resuscitate." The person who (allegedly wrongfully) ordered the resuscitation might be one of the three currently named doctors, says plaintiff, or it may be none of those three. Because the case was dismissed before discovery, to this day plaintiff does not know the answer to that question. And in that sense, he says, plaintiff was unclear as to the respective "roles" of the potential defendants at the time he filed the original complaint.

¶ 40    It is a creative argument but, ultimately, we cannot accept it. Our focus, as noted, is on what the later-added defendant would understand about the plaintiff's intentions when reading the original complaint. Though plaintiff does an admirable job on appeal of delineating between the doctors who actually performed the resuscitation, on the one hand, and the individual who ordered it, on the other, the original complaint did not make that distinction.

¶ 41    The original complaint identified the actions taken by the Hospital's agents—the resuscitation, despite the existence of a DNR on file—and the various causes of action that this action spawned. The three doctors here would reasonably understand that the plaintiff knew that they were doctors who took part in the resuscitation, yet the plaintiff chose not to sue them individually. A reasonable person in these doctors' shoes would *not* understand that the plaintiff was attempting to distinguish between the doctors following orders and the one giving them out.

11

¶ 42    True, the complaint named "John Doe" defendants, but plaintiff did not allege anything about them. He listed them in the caption and never once mentioned them again. There was no allegation, for example, that a "John Doe # 1" ordered the resuscitation that other doctors obligingly followed. An allegation like that would have immediately signaled to a would-be defendant that the plaintiff was trying to distinguish among the doctors, choosing to individually sue the doctor who ordered the resuscitation but not the ones complying with the order.

¶ 43    But absent some allegation of that nature, these doctors would have no reason to think that their omission as party-defendants in the original complaint was due to anything but a conscious choice by plaintiff. Neither the original complaint nor anything that occurred post-filing but during the limitations period (plus time for service) would have led these doctors to believe that plaintiff had made a mistake as to the identity of the proper defendants.

¶ 44    We thus agree with the circuit court that the relation-back doctrine is not available here, and the suit against these three doctors is time-barred.

¶ 45                                        CONCLUSION

¶ 46    The judgment of the circuit court is affirmed.

¶ 47    Affirmed.

---

*Redmond v. Galvan*, **2022 IL App (1st) 210653**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-7431; the Hon. Melissa A. Durkin, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | T.J. Jesky, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Jillian Book and Catherine Ó Súilleabháin, of Anderson, Rasor & Partners, LLP, of Chicago, for appellees. |

---