2024 IL App (1st) 240828-U

No. 1-24-0828B

Order filed July 12, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 11185 |
| | ) | |
| RAFAL POLANSKI, | ) | Honorable |
| | ) | Neera Walsh, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Trial court did not abuse its discretion in granting the State's petition to detain defendant before trial. Affirmed.

¶ 2     Defendant Rafal Polanski appeals from the March 26, 2024, order of the circuit court of Cook County denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110 *et seq*. (West 2022)), which was amended by Public Act 11-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. Defendant argues

that the State failed to meet its burden of proving by clear and convincing evidence that: (1) defendant posed a real and present threat to the safety of any person or persons or the community; and (2) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or defendant's willful flight. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was arrested on September 5, 2022, and charged with attempted first-degree murder and aggravated domestic battery. Bond hearings were held on September 6, 2022, January 24, 2023, and May 4, 2023. Defendant was denied pretrial release on each of these occasions. Following enactment of the Pretrial Fairness Act, defendant filed a petition to grant release. He argued that he did not pose a real and present threat to the safety of the community or any person, he did not have a criminal record prior to this case, and he had sought opportunities to learn and better himself in jail. The State filed a petition for pretrial detention, arguing that defendant posed a real and present threat to the safety of any person or persons or the community based on specific articulable facts, and that there was a high likelihood of willful flight to avoid prosecution.

¶ 5     On March 26, 2024, a hearing was held on the petitions. Defense counsel asked the court to grant defendant pretrial release because the alleged offense was a "stand-alone event." Defense counsel stated that since then, a divorce judgment and an order of protection had been entered. Defense counsel claimed that defendant did not know the whereabouts of the victim.

¶ 6     The State argued that the proof was evident and the presumption great that defendant committed an eligible offense for pretrial detention, defendant poses a real and present threat to the safety of any person or persons or the community, and that no condition or combination of

conditions could mitigate the real and present threat to the safety of any person or persons or the community. The State proffered the following evidence.

¶ 7    The victim and defendant were married and shared a six-year-old daughter. At the time of the offense, the victim's mother was visiting, and the daughter was at home. The couple had been in ongoing counseling to address marital issues. The State indicated that defendant "was trying to be intimate with the victim, and she established at counseling that she did not want to have that relationship with him."

¶ 8    On the date in question, while the victim was taking a shower, defendant walked into the bathroom. The victim told defendant she wanted privacy, but defendant "indicated to her that he should be able to see her naked because he's her husband." The victim then pushed him out of the bathroom and locked the door.

¶ 9    Defendant went downstairs and "grabbed the largest knife in the kitchen." The minor child observed defendant walking back to the bathroom. She also observed him prying open the door and gaining entry to the bathroom. After reentering the bathroom with the knife, the victim pleaded with him to calm down. Defendant "stabbed her about the head, the abdomen," her arms and her legs. She called for help and her mother woke up. Her mother saw defendant with a knife, standing in front of the victim "as she's crouched in a defensive position in the corner of the bathroom." The mother ran to get help from the neighbors.

¶ 10    The minor child "ran to the bathroom and she pulled her father's shirt *** in an attempt to pull him away from the victim." The victim was able to grab the knife and throw it away from the defendant, directing her child to hide the knife. Defendant then "began to choke the victim with both of his hands." He "pressed his thumb into the middle of her throat, applying pressure and impeding her breathing."

¶ 11    When officers arrived on the scene, the victim's mother directed the police officers to the upstairs bathroom and observed defendant in the bathroom. Defendant was "fully covered in blood" with no injuries to himself.

¶ 12    The victim was transported to the hospital where she underwent emergency surgery. She suffered four abdominal stab wounds, including one laceration to her liver. She had two lacerations on her head, "massive swelling in her throat, and a significant number of lacerations to both her arms and her hands and her legs."

¶ 13    The State indicated that when this matter initially came to court, medical personnel could not determine the extent of damage to the victim's throat due to swelling. She was intubated and fully dependent on machine airflow. Since then, the victim "has lost mobility in her left arm; she suffers from current trauma and has been undergoing therapy for that trauma." She lost her job due to having to undergo therapy and not being able to work. She cannot use her hand, and she suffers from posttraumatic stress disorder.

¶ 14    The State noted that defendant is a "native of Poland," and argued that he would have the opportunity to flee if released, knowing that if convicted, he would not be eligible for probation as a sentence in this case. The State further argued that defendant should be detained because the incident was unprovoked, and defendant did not stop even when the child tried to intervene.

¶ 15    The court noted that it had an opportunity to consider what was presented in the petition for pretrial release and the petition for detention. The court then stated:

"The State has shown by clear and convincing evidence the proof is evident or the

presumption is great that the defendant committed an eligible offense as listed in

the statute, attempt first-degree murder of his wife at the time in front of their minor

child who was approximately six years of age in their home; that he stabbed the victim numerous times causing wounds and also choking her.

The defendant poses a real and present threat to the safety of any person or persons or the community based on specific articulable facts of the case, *to wit*, the defendant choked and stabbed the victim in front of the minor child causing serious injury to the complaining witness. And, again, this was in their home, a place that they should have felt safe.

There are also indications based on – although the defendant is not charged with any sexual charges in this, that this did not just begin as a disagreement; this was the defendant engaging in believing that he should be able to view the victim in a state of undress in the bathroom, and that he had this right to do so; and then proceeded to go and get a knife and come back and proceeded to stab this victim numerous times.

The Court finds that there are no conditions or combination of conditions as set forth in the statute that can mitigate the real and present threat to the safety of any person or persons in the community based on specific articulable facts of this case.

Less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of this case, being that this alleged incident the defendant committed is inside of their home in front of a minor child and his then wife at the time; and to say that this defendant could be on electronic monitoring for an order of protection or a GPS would prevent him from returning when, in this particular case, this defendant left

the bathroom, went to the kitchen area, got a knife and then returned. So there is nothing to indicate that this defendant would not do this again.

As far as flight risk, the defendant is facing extensive punishment if he were to be found guilty of these charges. And so for those reasons, this defendant is going to be detained."

¶ 16   Defendant now appeals.

¶ 17                                    II. ANALYSIS

¶ 18   On appeal, defendant argues: (1) the State failed to meet its burden of proving by clear and convincing evidence that defendant posed a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case; and (2) the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case, or defendant's willful flight.

¶ 19   "Section 110-6.1(e) of the Code presumes that all defendants are eligible for pretrial release and places the burden of justifying pretrial detention by clear and convincing evidence on the State." *People v. Stock*, 2023 IL App (1st) 231753, ¶ 11; 725 ILCS 5/110-6.1(e) (West 2022). If the State files a petition requesting denial of pretrial release, "the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that a defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of another person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community

and/or prevent the defendant's willful flight from prosecution." *People v. Vingara*, 2023 IL App (5th) 230968, ¶ 7; 725 ILCS 5/110-6.1(e) (West 2023).

¶ 20    We review the circuit court's factual findings on whether the State proved these three elements under the manifest-weigh-of-the-evidence standard. *People v. Pitts*, 2024 IL App (1st) 232336, ¶ 29. "A finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent or if the finding is unreasonable, arbitrary, or not based on the evidence presented." *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. We review a circuit court's ultimate detention ruling under the abuse of discretion standard. *Id.* "An abuse of discretion occurs when the court's ruling is fanciful, arbitrary, or unreasonable or where no reasonable person would agree with the court's position." *People v. Wells*, 2024 IL App (1st) 232453, ¶ 16. "[I]n assessing the sufficiency of a trial court's findings, its written findings must be read in conjunction with its oral pronouncements." *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19. See also *People v. Costillo*, 2024 IL App (1st) 232315, ¶¶ 30-31 and *People v. Montano*, 2024 IL App (1st) 232481-U, ¶ 25 (agreeing that the trial court's written findings must be read in conjunction with its oral statements).

¶ 21    Defendant's first argument is that the State failed to prove by clear and convincing evidence that the proof is evident or the presumption great that defendant poses a real and present threat to the safety of any person or persons or the community. In support of this argument, defendant stated in his notice of appeal that the court based its decision that defendant posed a real and present threat on the 2022 incident that occurred inside the shared home of the defendant and the victim. Defendant argued that as of 2024, the home was no longer shared, and defendant "has no knowledge of the complaining witness's whereabouts since September 2022. Since this case

has been pending a divorce judgment has been entered, and defendant has not made any contact with the complaining witness or their child."

¶ 22    We conclude that the court reasonably found the State met its burden to show by clear and convincing evidence that defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e)(2) (West 2023). The Code permits the court to consider certain factors in assessing whether a defendant poses such a threat, including the nature and circumstances of the offense charged, whether it was a crime of violence involving a weapon, and characteristics of the defendant. 725 ILCS 5/110-6.1(g) (West 2023); 725 ILCS 5/110-5(a) (West 2023); see *People v. Snowden*, 2024 IL App (1st) 232272-U, ¶ 27. Here, the State's proffered evidence was sufficient for the trial court to find that the proof was evident that defendant stabbed the victim multiple times with a deadly weapon, and that when the victim was able to take away his knife, he proceeded to strangle the victim.

¶ 23    Additionally, section 110-6.1(g)(9) of the Code states that the court can consider any other factors, including those listed in section 110-5 of the Code. 725 ILCS 5/110-6.1(g)(9) (West 2023). Section 110-5(a)(6) of the Code states that when a person is charged with attempted first-degree murder of a spouse, the court may consider whether the person has access to deadly weapons, the duration of the incident, physical injury, strangulation, and forcible entry to gain access to the alleged victim.

¶ 24    Here, the proffered evidence showed that defendant forcibly entered the bathroom to gain access to the victim by picking a lock. He then used a deadly weapon to stab her multiple times. When he could no longer stab the victim with a knife because the victim took it away, he strangled her. He was not thwarted by the presence of either his six-year-old daughter, or his mother-in-law.

The victim suffered significant injuries, including the loss of mobility in her left arm. Accordingly, we find that the trial court could reasonably find that defendant posed a "real and present threat" to the victim and the community, and its finding was not against the manifest weight of the evidence.

¶ 25    From this evidence, the trial court could also reasonably conclude that the State met its separate statutory burden to prove that "no condition or combination of conditions" could mitigate the real and present threat posed by defendant. Section 110-5 of the Code outlines the factors trial courts should consider in determining conditions of pretrial release. 725 ILCS 5/110-5 (West 2023). These factors include the nature and the circumstances of the offense; the weight of the evidence against defendant; the history and characteristics of defendant; and if the defendant is charged with attempted murder of his spouse, whether defendant has access to deadly weapons, the severity and duration of the alleged offense, physical injury, strangulation, and forcible entry. *Id.*

¶ 26    Here, the trial court found that less restrictive conditions would not avoid a real and present threat to the victim or the community, since the alleged incident occurred inside their home. The trial court also stated that electronic monitoring or GPS would not prevent defendant from returning to find the victim when "in this particular case, this defendant left the bathroom, went to the kitchen area, got a knife and then returned. So there is nothing to indicate that this defendant would not do this again." The trial court specifically referenced how when defendant discovered he was locked out of the bathroom he went to the kitchen and got a knife, picked the locked bathroom door, and proceeded to stab the victim multiple times. When the knife was eventually taken from him, he then began strangling the victim until authorities arrived on the scene. A locked door, his child as a witness, the presence of his mother-in-law, and the removal of the knife, were

all measures that did not thwart defendant form his goal of attempting to murder the victim, and therefore there is no reason to think that GPS or electronic monitoring would prevent him from finding the victim again. Accordingly, the trial court's finding that the State met this requirement was also not against the manifest weight of the evidence.

¶ 27    Defendant's reliance on *People v. Stock*, 2023 IL App (1st) 231753 does not convince us otherwise. In *Stock*, the defendant was charged with one count of aggravated battery/discharge of a firearm. *Id.* ¶ 1. The evidence proffered by the State was that defendant picked up a handgun during an argument with his wife and discharged one round into the bedroom wall. *Id.* ¶ 5. The bullet penetrated the bedroom wall, and entered the adjoining bathroom, and grazed his wife, who was in the bathroom. *Id.* His wife suffered a grazing wound to her stomach and an injury to her hand. *Id.*

¶ 28    On appeal, this court agreed that the trial court's findings at the pretrial detention hearing were not against the manifest weight of the evidence. *Id.* ¶ 13. As to whether no condition or combination of conditions could mitigate the real and present threat to the safety of any person or the community, the court found that the State did not present any evidence supporting that conclusion. *Id.* ¶ 17. The court found that "the bare allegations that defendant has committed a violent offense are not sufficient to establish this element." *Id.* ¶ 18. The court stated that if the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, "then the legislature would have simply deemed those accused of violent offense ineligible for release." *Id.* However, the court stated that "[t]his is not to say that alleged facts stating the basic elements of an offense are not relevant or are not part of the proof that no conditions could mitigate the threat posed by a defendant." *Id.*

¶ 29　In the case at bar, the State presented evidence beyond the bare allegations of the offense of attempted first-degree murder to meet its burden of proof. The proffered evidence of defendant repeatedly stabbing the victim certainly made up the basic elements of the offense. 720 ILCS 5/8-4(a) (West 2022) (a person commits the offense of attempt when, with the intent to commit a specific offense, he does any act that constitutes a substantial step toward the commission of that offense); 720 ILCS 5/9-1(a)(1) (West 2022) (a person who kills an individual without lawful justification commits first degree murder if in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another). However, as the court noted, defendant forced entry into the bathroom to get to the victim, used a deadly weapon to stab her multiple times, and then proceeded to strangle the victim when he lost possession of his knife. The presence of their six-year-old daughter and the victim's mother did not stop defendant's attack. The victim had to undergo emergency surgery for the lacerations she sustained, and lost mobility in her left arm. These specific articulable facts go well beyond "bare allegations that defendant has committed a violent offense." *Stock,* 2023 IL App (1st) 231753, ¶ 18. Accordingly, we find *Stock* to be inapposite to the case at bar.

¶ 30　Considering our finding that the trial court properly found that the State met its burden of proof by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or the community, we need not address defendant's argument regarding whether he was a flight risk. See *People v. Simmons*, 2024 IL App (1st) 240592-U, ¶ 17 (dangerousness and flight are separate bases for pretrial detention).

¶ 31 For the foregoing reasons, we find that the trial court did not abuse its discretion in granting the State's pretrial petition for detention of defendant.

¶ 32                                    III. CONCLUSION

¶ 33 We affirm the judgment of the circuit court of Cook County.

¶ 34 Affirmed.