2024 IL App (1st) 241223-U

SECOND DIVISION
August 30, 2024

No. 1-24-1223B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 454501 |
| | ) | |
| ERIC HERNANDEZ, | ) | Honorable |
| | ) | Adrienne E. Davis, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justice Cobbs concurred in the judgment.
Justice Ellis specially concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm the circuit court's detention order. The trial court's finding that the proof is evident or the presumption great that defendant committed the charged offenses and its finding that defendant poses a real and present threat to the safety of a person or the community were not against the manifest weight of the evidence. The trial court's finding that no condition or combination of conditions can mitigate the real and present threat to the safety of a person or the community was not an abuse of discretion.

¶ 2    Defendant appeals from an order under which the circuit court determined that defendant should be detained pending trial. Defendant argues on appeal that the State failed to meet its burden to show he poses a real and present threat to the safety of a person or the community. He further argues that the State failed to meet its burden to show that no conditions of pretrial

release could mitigate the threat he poses to the safety of a person or the community. We reject defendant's contentions on appeal and, accordingly, we affirm.

¶ 3                          BACKGROUND

¶ 4      Defendant, Eric Hernandez, was arrested on March 21, 2022 and was charged with first-degree murder, aggravated domestic battery and aggravated battery. Defendant's arrest occurred before amendments were made to the Pretrial Fairness Act (725 ILCS 5/110-6.1(a)(1.5) (West Supp. 2023) (amended by Public Act 101-652 (eff. Jan. 1, 2023)) which altered the law concerning pretrial release and pretrial detention. After defendant was arrested, he had a bond hearing, and he was ordered to be held without bail pending trial. Two years later, after amendments were made to the Pretrial Fairness Act and while awaiting trial, defendant filed a petition seeking pretrial release under the new law. The State filed a petition for pretrial detention.

¶ 5      At the detention hearing, the State proffered evidence that defendant and his then-wife, Aracely Hernandez met at a restaurant on March 6, 2022. Defendant and Aracely had four children together and Aracely was six-and-a-half months pregnant with their fifth child. Although they were married at the time of their meeting, they had separated six months earlier.

¶ 6      At the restaurant, defendant accused Aracely of infidelity, and he questioned whether he was the father of her unborn child. They argued and went outside to defendant's car. Defendant drove to 5240 West Grand where he began to strike Aracely repeatedly while still in the car. Defendant then exited the car, walked around to the passenger side where Aracely was seated, opened the passenger-side door, and began to strike Aracely again. Defendant got back into the car and drove a couple blocks further. He stopped the car again at 5401 West Grand. At that location, defendant got out of the car, went to the passenger side, opened the passenger-side

door, and pulled Aracely out of the car before slamming her to the ground. While Aracely was on the ground, defendant kicked her repeatedly about her body. He took Aracely's phone and drove away, nearly hitting her with the open passenger-side door as he left the scene. Both incidents of defendant beating Aracely were captured on surveillance video, and defendant's face is visible in both videos.

¶ 7    Aracely flagged down a passerby. The police were called, and they came to the scene and transported Aracely to the hospital. When Aracely arrived at the hospital, the fetus's heartbeat was very low. The doctors determined that they needed to attempt an emergency cesarian section. The baby was delivered, but the baby only survived for 20 minutes. The medical examiner determined that the baby's cause of death was prematurity due to maternal blunt force injury from an assault. The baby's death was classified as a homicide.

¶ 8    The State further proffered evidence that defendant had been previously accused of domestic violence. The Illinois Department of Child and Family Services was involved with the family at the time of the offense. At the time of the detention hearing, defendant had another court case pending that preceded this case by a month in which he allegedly punched Aracely causing redness and swelling under her eye. In another incident a year earlier, Chicago Police officers found Aracely running down a street, and both of her eyes were swollen.

¶ 9    After submitting its proffer to the court, the State argued that "defendant poses a real and present danger to the safety of any person or persons or the community based on the specific articulable facts of this case, namely [Aracely]." The State further argued that "no conditions or combinations of conditions set forth in the statute can mitigate that risk."

¶ 10    Defendant pointed out that he was 30 years old and has a high school diploma. At the time he was arrested in this case, defendant was employed performing general labor for a

wholesale bakery. Defendant had been employed in that job for one year and was employed at a different bakery for three years before beginning that job. While in jail, defendant involved himself in several programs, and he took courses in matters such as anger management and parenting. Defendant claimed that, if he was released pending trial, he would live with his parents and assist them in their daily needs. Defendant stated that if he was given pretrial release, he would attempt to work, he would attend all court appearances, and he would abide by any conditions set by the court. Defendant pointed out that he is a member of a church and has a strong support system of family and friends.

¶ 11    Defendant argued at the detention hearing that the State did not meet its burden for pretrial detention by clear and convincing evidence. Defendant further argued that "[t]here are conditions that [defendant] could abide by short of detention, and we would ask the Court to grant our petition [for pretrial release]."

¶ 12    The trial court found that the proof is evident and the presumption is great that defendant committed an eligible offense. The trial court further found that defendant poses a real and present threat to the safety of a person or the community. Finally, the trial court found that no condition or combination of conditions could mitigate the real and present threat to the safety of a person or the community based on the facts in this case. Based on those findings, the trial court ordered that defendant was to be detained and remanded to the Cook County Jail pending trial. Defendant now appeals.

¶ 13                                        ANALYSIS

¶ 14    This is an appeal from an order granting the State's petition for pretrial detention pursuant to section 110-6.1(a)(1.5) of the Pretrial Fairness Act (725 ILCS 5/110-6.1(a)(1.5) (West Supp. 2023) (amended by Public Act 101-652 (eff. Jan. 1, 2023)). Under section 110-

6.1(a)(1.5), the State may file a petition to deny a defendant pretrial release, and the circuit court shall conduct a hearing if the defendant is charged with an eligible offense under the PFA and it is alleged that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. 725 ILCS 6/110-6.1(a)(1.5) (West Supp. 2023). The State then has the burden to prove, by clear and convincing evidence, the following relevant propositions:

"(1) the proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a), and

(2) *** the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, by conduct which may include, but is not limited to, a forcible felony, the obstruction of justice, intimidation, injury, *** and

(3) no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e) (West Supp. 2023).

¶ 15    There is a split in the court about the proper standard of review to apply when reviewing a trial court's decision on a petition for pretrial detention. In some decisions, the court has applied an abuse of discretion standard generally to the trial court's decision. See *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. In other decisions, members of the court have advanced an opinion that *de novo* review is appropriate. See *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 67 (Ellis, J., specially concurring). We believe that our review of a decision to grant or deny a detention petition under section 110-6.1 of the Code requires a mixed standard of review.

However, in this case, our decision would be the same regardless of what standard of review we applied.

¶ 16    In applying the mixed standard of review, we must examine the record to determine whether it contains facts to support the trial court's factual determinations by clear and convincing evidence. This court applies the manifest weight of the evidence standard of review in cases involving questions of fact. *People v. Finlaw*, 2023 IL App (4th) 220797, ¶ 55. Because the first two propositions in an appeal from an order granting the State's detention petition involve factual findings, we will review those two determinations under the manifest weight of the evidence standard of review. *Saucedo*, 2024 IL App (1st) 232020, ¶ 35. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *People v. Smith*, 2023 IL App (3d) 230060, ¶ 34.

¶ 17    As to the third proposition in an appeal from an order granting the State's detention petition, the trial court must exercise a degree of discretion to determine whether any less restrictive means will mitigate the threat a defendant poses to a person or the community. *Saucedo*, 2024 IL App (1st) 232020, ¶ 36. "Courts are 'endowed with considerable discretion' where, as here, they are called upon to weigh and balance a multitude of factors and arrive at a decision that promotes not only 'principles of fundamental fairness' but 'sensible and effective judicial administration.' [Citation.]" *Id.* (citing *People v. Reed*, 2023 IL App (1st) 231834, ¶ 31). Thus, "[o]n the circuit court's determination that there were no conditions of release that could mitigate the safety risk, *** an abuse of discretion standard is most appropriate." *Id.* "An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful or unreasonable, or

where no reasonable person would agree with the position adopted by the [circuit] court." (Internal citations and quotation marks omitted.) *Id*.

¶ 18     As an initial consideration, defendant argues in both sections of his memorandum that the State failed to meet its burden at the detention hearing where it made conclusory statements about the propositions it needed to prove and did not specifically tie them to any evidence. Defendant highlights that, following the State's proffer, it argued that defendant "poses a real and present danger to the safety of any person or persons or the community based on the specific articulable facts of the case, namely, [Aracely]." Defendant points out that "the State immediately followed this conclusory statement with another one *** that "[i]t is our position that no condition or combination of conditions set forth in the statute can mitigate that risk." Defendant contends that when the State does not make arguments to tie the facts to the legal conclusions, it results in a finding that the State failed to meet its burden (citing *People v. Stock*, 2023 IL App (1st) 231753, ¶ 17).

¶ 19     When the detention hearing is considered in its totality, it is clear that the State presented specific evidence on both propositions discussed in the prior paragraph. Defendant focuses on the two sentences the State used to conclude its argument in support of pretrial detention. However, prior to making those two statements, the State set forth all of the reasons that defendant posed a danger to Aracely and the community. The State highlighted the brutal acts defendant allegedly perpetrated on Aracely that resulted in the victim's unborn child being killed along with the history of domestic violence. The entirety of the proffer was designed to show why defendant was dangerous, why he was a threat to Aracely, and why he was a threat to the community. The facts proffered and the inferences and conclusions that can be drawn therefrom addressed both of the challenged propositions. So, we reject defendant's argument that the State

failed to meet its burden based on it not adequately drawing a connection between the facts and the statutory requirements. The State proffered facts from which the trial court could clearly find that defendant posed a threat to the safety of persons and that no conditions of pretrial release could mitigate the threat posed. See *People v. Carpenter*, 2024 IL App (1st) 240037, ¶¶ 19-21; *People v. Polanski*, 2024 IL App (1st) 240828-U, ¶ 29.

¶ 20    On the merits, defendant argues that the State's proffer was unreliable. On appeal, defendant points out, as he did during the detention hearing, that there is conflicting evidence about whether Aracely knew she was pregnant at the time of the offense. A report from the hospital indicates that Aracely did not know she was pregnant until she was informed of the fact by the medical staff. Defendant argues that the reliability of the State's proffer was further called into question by the State being unable to answer the trial court's questions about where on her body Aracely was kicked. The State responded to the trial court's inquiry by saying the kicking was "about her body," but it indicated it did not have the exact information about where she was kicked because there was a vehicle blocking the ground area on the surveillance video. Defendant contends that "[i]f such a fundamental portion of the State's proffer is unreliable, it likewise calls into question what else was unreliable and casts doubt upon its entire proffer."

¶ 21    Defendant's argument is not persuasive. When determining whether defendant poses a real and present threat to the safety of a person or the community, it is not imperative that either defendant or the victim knew she was pregnant. It is likewise unimportant whether the State could identify specifically where on Aracely's body defendant kicked her. The State proffered evidence that defendant, on two occasions, repeatedly struck his wife. On the second occasion, defendant threw Aracely to the ground, kicked her repeatedly, and nearly hit her with the car door as he drove away. After beating her, defendant took the victim's phone and left her lying on

the street all alone. The State also proffered evidence of two other incidences of domestic violence in which defendant allegedly injured his wife within approximately a year of this incident.

¶ 22    At a detention hearing, the State is entitled to present evidence by way of proffer based upon reliable information. 725 ILCS 5/110-6.1(f)(2) (West Supp. 2023). The rules of evidence concerning admissibility in criminal trials "do not apply to the presentation and consideration of information at the hearing." 725 ILCS 5/110-6.1(f)(5) (West Supp. 2023). The trial court found the State showed, by clear and convincing evidence, that defendant poses a real and present threat to the safety of a person or the community, based on the specific articulable facts of the case. The finding is not against the manifest weight of the evidence. See *Saucedo*, 2024 IL App (1st) 232020, ¶ 35 (stating that we review the proposition of the defendant's threat to safety under the manifest weight of the evidence standard).

¶ 23    Defendant pointed out to the trial court during the detention hearing that there was a conflict between the proffer and a medical record, and the trial court was likewise aware of the State's proffer regarding where the victim was kicked. The trial court nonetheless found there to be clear and convincing evidence that defendant poses a threat to persons or the community, namely Aracely, based on the facts proffered. Based on the facts presented at the hearing, the opposite conclusion is not "clearly evident." See *People v. Davis*, 352 Ill. App. 3d 576, 579 (2004) ("A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident.").

¶ 24    Defendant also argues that the trial court erred by granting the pretrial detention petition because defendant scored a 2 on both the failure to appear scale and the new criminal activity scale. These scales are both scored from 1-6, so defendant points out that he was at the low end

of both scales. Defendant was also given a "medium risk" score on the Domestic Violence Screening Inventory. He points out that he has no felony convictions in his background, and no prior convictions for any acts of violence.

¶ 25    As defendant acknowledges, the trial court may consider the risk assessment from pretrial services, but the court has no obligation to follow the recommendations.[1] The statute provides that the trial court *may* use a risk assessment tool *to aid* its determination. See 725 ILCS 5/110-5(b) (West Supp. 2023). Here, the trial court heard the State's proffer, heard the mitigation offered by defendant, and reviewed the risk assessments offered by pretrial services. After taking everything into consideration, the trial court concluded that the facts supported detaining defendant until trial.

¶ 26    Defendant argues that the State failed to prove by clear and convincing evidence that no conditions could mitigate the threat to safety posed by defendant. In order for a defendant to be denied pretrial release, the State must demonstrate that "no condition or combination of conditions *** can mitigate [] the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e)(3) (West Supp. 2023). Defendant recites the mitigation evidence he offered at the detention hearing to argue that the trial court erred when it ordered him detained pending trial.

---

[1] In this argument, defendant relies on the section of the statute that deals with setting conditions for pretrial release. See 725 ILCS 5/110-5(b) (West Supp. 2023). Nonetheless, it is apparent that the trial court can consider the risk-assessment tools when determining whether pretrial detention is appropriate. The risk-assessment tool results are, however, merely a consideration, and the trial court may give the results the weight it deems to be appropriate.

¶ 27    Defendant contends that the trial court's finding that no conditions could mitigate the threat to safety he poses is flawed. The trial court explained that electronic monitoring was not appropriate for defendant because it cannot ameliorate the threat he poses.

> "[L]ess restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case because [electronic home monitoring] cannot prevent acts of domestic violence. [Electronic home monitoring] has two days of unfettered release and cannot prevent the defendant from committing an additional offense."

Defendant points out that the statute governing electronic home monitoring provides for some movement for a defendant, so it is improper to hold that fact against a defendant to determine pretrial release is improper (citing 730 ILCS 5/5-8A-4(A-1) (West 2022)). Defendant explains that, under the trial court's reasoning, any defendant could be precluded from electronic monitoring because of the possibility the defendant could commit additional crimes during the statutorily allowed movement outside the residence permitted in electronic monitoring.

¶ 28    Defendant relies on *People v. Mitchell*, 2024 IL App (1st) 240730-U, ¶¶ 22-26 to argue that it is improper for the trial court to find pretrial detention to be proper on the basis that electronic monitoring allows for time outside the home. We agree with defendant that, like in *Mitchell*, it is improper to state that persons on electronic monitoring have "two days of unfettered release." See *id.* at ¶ 24. Despite the trial court's characterization of electronic monitoring, its overall thinking for finding no set of conditions would mitigate the risk posed by defendant was sound. More importantly, the State demonstrated by clear and convincing evidence that no conditions of release could mitigate the real and present threat to the safety of a

person or the community, and we need not fully endorse the trial court's reasons in order to affirm its decision. *People v. Bausch*, 2019 IL App (3d) 170001, ¶ 26 (the appellate court may affirm on any basis supported by the record and does not need to adopt the circuit court's reasoning); see also *Redmond v. Galvan*, 2022 IL App (1st) 210653, ¶ 27.

¶ 29    The proffered evidence showed defendant's capacity for violence. Defendant brutally attacked his pregnant wife, took away her phone, and left her injured and alone on the side of the road. Aracely was left with various injuries, and doctors had to prematurely deliver her baby because of the severity of defendant's attack. The baby's cause of death was prematurity due to maternal blunt force injury from an assault. The baby's death was classified as a homicide. When courts determine whether any conditions for pretrial release are appropriate, courts consider factors similar to those used in determining whether a defendant poses a real and present threat under section 110-6.1(g). *Saucedo*, 2024 IL App (1st) 232020, ¶49. The Act expressly requires the court to examine the specific articulable facts of the case when determining whether conditions of release could be appropriate. 725 ILCS 5/110-6.1(e)(3) (West Supp. 2023). "The nature and circumstance of the crime charged may well be the most compelling evidence" that no conditions of release would mitigate the risk to safety posed by the defendant. *Carpenter*, 2024 IL App (1st) 240037, ¶ 17. Defendant repeatedly beat his pregnant wife—to the point of killing the unborn child—before taking her phone from her and leaving her helpless on the side of the road. The State's proffer demonstrated a particularly detestable crime by a person capable of significant violence.

¶ 30    According to the proffer, defendant has attacked Aracely at least three times in roughly a one-year span. The acts of violence in this case occurred while defendant already had another pending case for domestic violence against Aracely, so the pendency of a criminal case has

already shown to not prevent defendant committing acts of violence. See *People v. Robinson*, 2023 IL App (2d) 230345-U, ¶¶ 13-14. The trial court found in this case that restrictive conditions other than pretrial detention would be inadequate to mitigate the threat posed by defendant. As the trial court intimated, while electronic monitoring can "monitor" defendant's movements, it cannot prevent those movements in real time. Electronic monitoring would not, for example, prevent defendant from going to Aracely's residence and attacking her, it would merely show, later on, that defendant made unauthorized movements in violation of the terms of electronic monitoring. Thus, when a trial court concludes electronic monitoring would be an appropriate condition to serve the aims of the pretrial release statute, it implicitly must have some confidence the defendant will abide by the terms of release.

¶ 31     The statute for determining the conditions for pretrial release goes to considerable lengths to attempt to protect victims of domestic violence from their alleged abuser during the pretrial period. See 725 ILCS 5/110-5(a)(6)(A-L) (West Supp. 2023). The statute also instructs the trial court to consider the nature and seriousness of the real and present threat to any person or the community, based on the specific articulable facts of the case, that would be posed by the defendant's release as contemplated by the Rights of Crime Victims and Witnesses Act (725 ILCS 120 /1 *et seq*. (West Supp. 2023)). The Rights of Crime Victims and Witnesses Act gives victims of a crime the right to have their safety and their family's safety considered in determining whether to release the defendant pending trial and in setting conditions of any such release. 725 ILCS 120/4(a)(7.5) (West Supp. 2023).

¶ 32     The proffered facts here show that there are people in need of protection from defendant due to the circumstances and the level of violence exhibited by him. On the circuit court's determination that there were no conditions of release that could mitigate the safety risk posed by

defendant, an abuse of discretion standard applies. *Saucedo*, 2024 IL App (1st) 232020, ¶ 36. The trial court's decision here is not arbitrary, fanciful or unreasonable. Certainly, the trial court's decision is not such that no reasonable person would agree with the position it adopted. Therefore, the trial court did not abuse its discretion in finding that, based on the specific facts of this case, no conditions could mitigate the real and present threat to the safety of a person or the community.

¶ 33 CONCLUSION

¶ 34 Accordingly, we affirm.

¶ 35 Affirmed.

¶ 36 Ellis, J., specially concurring.

¶ 37 I concur in the judgment and reasoning, but I would employ a *de novo* standard of review for the reasons given in *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 67 (Ellis, J., specially concurring).