2024 IL App (2d) 240502-U
No. 2-24-0502
Order filed October 30, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-1291 |
| DEJUAN M. BINION, | ) ) ) | Honorable David Christopher Lombardo, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: Circuit court's denial of pretrial release did not constitute an abuse of discretion, where it reasonably determined that defendant posed a threat to community safety and where no conditions could mitigate that risk. Affirmed.

¶ 2    Defendant, Dejuan M. Binion, appeals from the denial of pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of Public Act 101-652 (eff. Jan. 1, 2023)). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On June 28, 2024, defendant was charged with possessing a machine gun/automatic weapon (Class X) (720 ILCS 5/24-1(a)(7)(i) (West 2022)), felon possession/use of a machine gun (Class X) (*id.* § 24-1.1(a)), aggravated unlawful use of a weapon, no FOID (Class 4) (*id.* § 24-1.6(a)(2)), aggravated unlawful use of a weapon, no Firearm Concealed Carry Act (FCCA)/ FOID card (Class 4) (*id.*), aggravated unlawful use of a weapon, no FCCA (Class 4) (*id.*), possession of cannabis, 10 to 30 grams (Class B) (*id.* § 550/4(b)), and resisting a peace officer (Class A) (*id.* § 5/31-1(a)(1)).

¶ 5        On June 28, 2024, the State filed a verified petition to detain defendant, alleging that the proof was evident or the presumption great that defendant committed a detainable offense, his pretrial release would pose a real and present threat to the safety of any person or the community, and there is no set of conditions that mitigate or alleviate the risks defendant posed. *Id.* § 5/110-6.1. As to the latter, the State added that, as effective as pretrial monitoring may be in many cases, there is no technology that can confine defendant to his home with certainty, nor can pretrial services engage in effective 24-hour surveillance of defendant's residence.

¶ 6        The State noted that, on June 28, 2024, at around 1:20 a.m., defendant was walking in a crosswalk at an intersection and waived down a Fox Lake police sergeant. The sergeant and his partner pulled over, and defendant stated that he had just gotten off the train and was trying to get to his girlfriend's house but could not get an Uber ride. The sergeant offered defendant a ride, but stated that he would have to pat him down before defendant got into the squad car, per department policy. When the sergeant mentioned the pat down, defendant immediately started acting "weird." He grabbed his waistband, turned his front away from the officers, and began digging into his pants. When the sergeant asked defendant what he had in his pants, defendant pulled out a bag with suspected cannabis in it. The sergeant told defendant that he was not concerned about the

cannabis, and defendant kept reaching into his pants. When the sergeant asked defendant if he had a gun, defendant replied yes. The sergeant and his partner grabbed defendant's arms. Defendant would not put his hands behind his back, so he was taken to the ground.

¶ 7    The State further related that, during a search of defendant, police located a firearm inside his pants near his left ankle. Defendant wore joggers, which are tight around the ankle, and the firearm was inside his pants near the ankle. The sergeant assumed that defendant shoved the firearm down when he was "messing" with his pants. The firearm was a Glock 9 mm handgun with a switch that allowed the firearm to become an automatic weapon. A magazine containing 15 rounds was inserted, and there was one round in the chamber. On defendant's person and in his backpack, police located 5 separate bags with about 20 grams of suspected cannabis, and they located in his backpack a box of 9 mm bullets with 32 rounds in the box. On the scene, police asked defendant if he had a FOID card, and he stated that he knew that his FOID card " 'wasn't good.' " After he was Mirandized, defendant stated that he knew he was "screwed" because this was his third gun charge. He had two prior felony convictions for aggravated unlawful use of a weapon in Cook County (2019 and 2022). Also, defendant had no FOID card and no FCCA license.

¶ 8    The State further added that defendant had a handgun with a switch, loaded on his person, on a public street. He continued to carry firearms, it noted, when he knew that he was not allowed to, despite prior convictions. This showed, the State argued, that defendant's pretrial release would pose a real and present threat to community safety.

¶ 9    At the hearing, which was held on July 1, 2024, the State presented the pretrial services public safety assessment report, which recommended level two supervision (*i.e.*, mandated and statutory conditions, court reminder calls/text before each court date, and check-in by phone one

time per month). The State argued that defendant's pretrial release posed a real and present threat to the community. It noted that one of defendant's prior convictions arose out of an arrest on July 19, 2019, in Cook County for aggravated unlawful use of a weapon (Class 4), for which defendant received 18 months' probation, a petition to revoke was filed, and probation was terminated. A June 7, 2022, arrest in Chicago for aggravated unlawful use of a weapon and for which defendant pleaded guilty resulted in a sentence of one year imprisonment. Noting that defendant had stated that he lived/worked in Maryland, the State argued that there were no conditions that would mitigate the threat he posed.

¶ 10    Defense counsel responded that defendant born and raised in Illinois, and he had lived for several months in Antioch with his girlfriend and her daughter (and another child was on the way). Defendant had a bachelor's degree in sports management and an associates degree. He graduated with a 3.7 grade point average and was on the dean's list. He planned on returning to school to earn a master's degree in the spring. Defendant also coached football at the park district, had cousins in the area that he watched, had a five-year-old brother with autism (whom, with his father, he helped). Counsel also stated that defendant had no convictions involving violence, and, in the present case, defendant did not threaten anyone or do anything with the gun.

¶ 11    Counsel acknowledged that defendant was not supposed to have the gun, but he was the one who flagged down the police. In prior cases, he was working, there was a weapon in his vehicle, and he pleaded guilty, but he was not doing anything suspicious, and police were not looking for him.

¶ 12    The circuit court granted the State's petition. It found that the State met its burden to show that the proof was evident and the presumption great that defendant committed a detainable offense, as there was "no real quarrel" on this issue. Next, it determined that the State established

that defendant posed a real and present threat to community safety based on his carrying a hidden loaded firearm, the lack of a valid FOID card, an extra 32 rounds on his person and 15 rounds in the weapon plus 1 in the chamber (so, 48 total rounds, "which is concerning"). Finally, the court determined that the State met its burden to show that no conditions or combination thereof could mitigate the real and present threat defendant posed to the community, based on his trying to hide the gun from the officer and moving it around on his body, the "peculiar nature of the fact that" he carried a hidden gun in his pants, had no valid FOID card, and the presence of 48 rounds of ammunition.

¶ 13 On August 1, 2024, defendant filed a motion for relief (Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2024)), requesting that he be released with conditions. He challenged the circuit court's dangerousness finding and its determination that no conditions could mitigate the threat he posed to community safety. As to the dangerousness finding, defendant noted that he initiated contact with police by flagging down the squad car. He was not suspected of committing a crime or causing any problems, but was merely walking to his girlfriend's house. Defendant also contended that, when he was asked, he immediately admitted to possessing a firearm and was not brandishing the firearm or threatening anyone with it. Mere possession alone does not indicate dangerousness, he argued. Defendant also noted that he did not have any violent convictions in his background and had changed his life for the better by attending college, working, and starting a family. He asserted that he would not be a threat to any person or the community if he were to be released.

¶ 14 Addressing the circuit court's determination that no conditions could mitigate the threat he posed, defendant argued that the court could have ordered that he have no firearms or other dangerous weapons, and/or it could have imposed a curfew and required defendant to abide by electronic home monitoring (EHM).

¶ 15 On August 9, 2024, the circuit court denied defendant's motion for relief. The court found, as an aggravating factor, that defendant was not entitled to possess a weapon but was carrying one in the early morning hours and after being on public transportation. It noted that it was illegal for defendant to possess any firearm, and he had two prior felony firearm convictions. "You have known this for some time, and so if the law that you're not allowed to possess a weapon is not enough of a disincentive to possess a weapon, what good is a Court order going to do? To add on top of that it's illegal to do so. I find also it's aggravating your gun had been modified making it an automatic weapon that could shoot with a switch." The court noted that the modification "technically" rendered the gun a "machine gun, far more dangerous than other types of guns and that was a modification to the weapon you had in your possession." This supported a finding, it determined, that no conditions could mitigate any risk defendant posed to the community. "That is the danger that you pose because you knew allegedly you possessed this gun and should know that would be an illegal act on your part, and that did not seem to persuade you not to do so."

¶ 16 On August 29, 2024, defendant filed a notice of appeal. The Office of the State Appellate Defender declined to file a memorandum pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. April 15, 2024). The State has submitted a memorandum opposing defendant's appeal.

¶ 17                                    II. ANALYSIS

¶ 18 Pretrial release is governed by article 110 of the Code. 725 ILCS 5/110 (West 2022). Under the Code, as amended, all persons charged with an offense are eligible for pretrial release, and a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e). As relevant here, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (*id.*

§ 110-6.1(e)(1)), that the defendant's pretrial release poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(e)(2)), and that no condition or combination of conditions can mitigate that risk (*id.* § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 19    We review defendant's arguments under a bifurcated standard of review: the court's factual determinations are reviewed to determine whether they are against the manifest weight of the evidence, and the court's ultimate determination regarding denial of pretrial release is reviewed for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs when the court's decision is unreasonable. *Id.* Likewise, a decision is against the manifest weight of the evidence where the court's determination is unreasonable. *Id*.

¶ 20    First, defendant challenges the court's dangerousness finding, noting that he initiated contact with police by flagging down the squad car while walking to his girlfriend's house and that he immediately admitted to possessing a firearm when he was asked. He also notes that he does not have any violent convictions in his background, attends college, works, and started a family. Defendant also contends that mere possession alone does not indicate dangerousness.

¶ 21    The circuit court's dangerousness finding was not against the manifest weight of the evidence. When making a dangerousness finding, the Code sets forth several non-exhaustive factors that a court may consider, including the nature of the offense, the history and characteristics of the defendant, and "any other factors." 725 ILCS 5/110-6.1(g) (West 2022). A *loaded* firearm is inherently dangerous. *People v. Ross*, 229 Ill. 2d 255, 275 (2008) (explaining that "loaded guns" are part of a category of weapons that are "dangerous *per se*"). In granting the State's petition to detain, the court noted that defendant carried a hidden loaded firearm with ammunition in the

chamber, had extra rounds of ammunition on his person, and lacked a valid FOID card. In denying defendant's motion for relief, the court further found that defendant was not entitled to possess a weapon due to his prior felony firearm convictions and that his weapon had been modified with a switch to become an automatic weapon, thereby, rendering it a machine gun, a far more dangerous type of gun. We also note that, when the sergeant mentioned that he had to pat down defendant before allowing him into his squad car, defendant turned away from the officers, kept reaching into his pants, and did not volunteer that he had a gun until specifically asked if he had one. Based on all the evidence, the circuit court's dangerousness finding was reasonable. It considered defendant's criminal history of multiple felony firearm convictions, along with the threat of danger from the nature of the loaded weapon he initially hid from police during the pat down and the ammunition he carried.

¶ 22    Next, defendant argues that the circuit court erred in determining that no conditions would mitigate any threat he posed to the community. He contends that the court could have ordered that he have no dangerous weapons and/or it could have imposed a curfew and required defendant to abide by EHM.

¶ 23    Where the circuit court finds that the State proved a valid threat to the safety of any person or the community, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a)(1)-(6) (West 2022). In reaching its determination, the circuit court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the threat the defendant poses to any person or the community. *Id.*

¶ 24    We reject defendant's argument.  Defendant was prohibited from possessing any firearm, but, during the pat down, he initially attempted to hide a loaded automatic weapon (that he had carried on public transportation and on the street) from police.  He also carried 48 rounds of ammunition.  Thus, defendant's history of gun possession and his demonstrated ability and willingness to obtain weapons when not permitted, supported that court's finding that no conditions of release could mitigate the threat defendant posed.  See *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 36 (the defendant's possession of a weapon while prohibited from doing so "suggests that continued detention is necessary to avoid the safety risk posed by the defendant").

¶ 25    In summary, the circuit court did not abuse its discretion in granting the State's petition to deny defendant pretrial release.

¶ 26                                    III. CONCLUSION

¶ 27    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 28    Affirmed.