2025 IL App (2d) 250381-U
No. 2-25-0381
Order filed December 8, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 25-CF-1819 |
| MARVIN FRYE, | ) ) | Honorable Bianca Camargo, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justice Schostok concurred in the judgment.
Justice McLaren specially concurred.

**ORDER**

¶ 1    *Held*: The circuit court properly denied pretrial release because, under section 110-6.1, potential suppression issues affect only the weight of the State's evidence and not its sufficiency, and the State established by clear and convincing evidence that defendant's dangerousness warranted detention.

¶ 2    Defendant, Marvin Frye, appeals the judgment of the Circuit Court of Kane County, which granted the State's petition to deny pretrial release pursuant to Article 110 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-1, *et seq*.), as amended by Public Acts 101-625, § 10-255 & 102-1104, § 70 (eff. Jan. 1, 2023) ) and 102-1104, § 70 (eff. Jan. 1, 2023) (collectively the "Acts").

¶ 3                                    I. BACKGROUND

¶ 4      On August 4, 2025, an officer patrolling I-88 observed a car speeding eastbound. The officer activated his emergency lights, whereupon the vehicle slowed, changed lanes without signaling, and stopped along the side of the road. The vehicle's driver and sole occupant was Marvin Frye, the defendant. After giving the officer his rental agreement, proof of insurance, and driver's license, defendant asked permission to urinate. The officer permitted him to do so on the side of the road. Defendant then approached the officer's window. There, he related that he was returning from Iowa, where he had worked at a festival. Defendant denied possessing anything illegal.

¶ 5      When asked about narcotics, defendant denied possessing any, and said that the topic made him uncomfortable. Defendant also informed the officer that he had been to prison before for robbery and cocaine possession. When asked about his most recent arrest, defendant stated that he "took a gun charge for his brother" in 2010. The officer reviewed defendant's history and found that his most recent arrest was actually in 2018 for possession of a firearm. This information in hand, the officer asked for consent to search the vehicle; defendant declined. Instead, defendant offered to give the officer "what he had," and retrieved a bottle of Remy Martin cognac from the passenger side of the car. When defendant opened his car door, the officer reported smelling raw cannabis. When the officer asked defendant to wait in his patrol car until backup arrived, defendant responded "why would you do me on my birthday." The officer interpreted this comment as defendant implying that there were illegal items in the car. After additional officers arrived, the police conducted a search of the vehicle. The search located two cell phones, a red Tupperware container with white power residue, currency wrapped in plastic, a digital scale, and shoes stuffed with baggies. Police later field tested the contents of these baggies, which returned results for 34.4

grams of cocaine and 85.4 grams of methamphetamine. As bases for probable cause, the officer listed the following: defendant's nervousness, criminal history involving narcotics and firearms, the reported odor of raw cannabis, and the open bottle of liquor. Upon being handcuffed, defendant stated that the shoes were not his. Again, the officer viewed this comment as indicating that defendant knew where the narcotics were located.

¶ 6     The State charged defendant with the following counts: (1) Possession of a firearm by a repeat felon in violation of 720 ILCS 5/24-1.7(a); (2) Armed violence in violation of 720 ILCS 5/33A-2(a); (3) Possession of a firearm with prior qualifying offenses in violation of 720 ILCS 5/24-1.1(a); (4) Illegal firearm possession without a FOID card in violation of 430 ILCS 65/2(a)(1), (5) Aggravated unlawful possession of a loaded weapon in a vehicle without a valid FOID card in violation of 720 ILCS 5/24-1.6(a)(1), and (6) four counts of possession with intent to deliver cocaine and methamphetamine in violation of 720 ILCS 570/401(a)(2)(A), 720 ILCS 646/55(a)(1), 720 ILCS 570/402(a)(2)(A), and 720 ILCS 646/60(a). The State filed a verified petition to detain on August 5, 2025, citing the dangerousness standard. The circuit court held a detention hearing on August 5, 2025, and entered a written order directing that defendant be detained prior to trial. The defendant filed a motion for relief, which the circuit court denied following argument on August 28, 2025. Defendant filed a timely notice of appeal on the same day.

¶ 7                                        II. ANALYSIS

¶ 8   Defendant urges us to reverse the circuit court's decision to deny defendant pretrial release because all or some of the State's evidence could be the product of an illegal search. We take no position on whether the circuit court should suppress any evidence. We instead consider whether, and to what extent, this consideration is relevant to denying defendant pretrial release.

Afterward, we consider whether the circuit court properly applied the statutory criteria.

¶ 9                                    A. General Principles

¶ 10    If charged with a detainable offense, the State may seek pretrial detention based on the defendant's dangerousness or risk of willful flight. 725 ILCS 5/110-6.1. Under the dangerousness standard, the State must show by clear and convincing evidence that  (1) "the proof is evident or the presumption great" that the defendant has committed a detainable offense, (2) "the defendant poses a real and present threat to the safety of any person or persons or to the community;" and (3) "no condition or combination of conditions" can mitigate that threat. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2024). "Clear and convincing evidence is that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." *People v. Morales*, 2024 IL App (2d) 230597 ¶ 15. "Although this description is stated in terms of reasonable doubt, our courts consider clear and convincing evidence to be more than a preponderance of the evidence and not quite approaching the beyond-a-reasonable-doubt standard necessary to convict a person of a criminal offense." *People v. Craig*, 403 Ill. App. 3d 762, 768 (5th. Dist 2010). Because the parties to the pretrial detention hearing proceeded solely by proffer, our standard of review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 44.

¶ 11            B. Pretrial Detention Depends on Statutory Criteria, Not Trial-Level Admissibility

¶ 12    Section 110-6.1 of the Criminal Code governs pretrial detention. The language of this section is therefore dispositive regarding the central question of this case. Thus, what appears to be a question regarding the sufficiency of evidence is, foremost, a question of statutory construction. "The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent." *Wade v. City of Chicago Police Pension Board*, 226 Ill. 2d 485, 509 (2007). "The best indicator of legislative intent is the plain language of the statute itself." *O'Connell v.*

*County of Cook*, 2022 IL 127527 (2022) ¶ 21. "The court should evaluate the statute as a whole, with each provision construed in connection with every other section." *Roselle Police Pension Board v. Village of Roselle*, 232 Ill.2d 546, 552 (2009). Section 110-6.1 is not silent on the issue of unlawful searches. Indeed, the statute directly addresses the issue, stating "[t]he defendant may not move to suppress evidence of a confession, however, evidence that proof of the charged crime may have been the result of an unlawful search **** is relevant in assessing the weight of the evidence against the defendant." 725 ILCS 5/110-6.1(f)(6).

¶ 13    Notably, the legislature chose the words "*relevant* in assessing the *weight* of the evidence against the defendant," rather than, for example "*dispositive* in assessing the *sufficiency* of the evidence against the defendant." *Id*. (emphasis added). The former, more lenient, construction contemplates that the circuit court may deny defendant pretrial release even if the State's evidence is potentially weak. When one considers the nature of pretrial detention, this is no surprise. One must presume the defendant is innocent of all crimes until the State has proven him otherwise beyond a reasonable doubt. *See* Ill. S. Ct. R. 431(b). Nonetheless, our legislature has instituted a system whereby the State may hold defendants on account of their dangerousness, not on account of their guilt.

¶ 14    Indeed, the statute explicitly divorces pretrial detention from traditional proofs. 725 ILCS 5/110-6.1(f)(5) ("The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing.") Moreover, proving dangerousness, unlike proving guilt, involves answering questions such as whether the "proof is evident or the presumption is great" that defendant *committed* the crime in question; not whether he will likely be found guilty at trial. 725 ILCS 5/110-6.1(e)(1)-(3).

¶ 15    Therefore, under section 110-6.1, a defendant may be detained when the evidence clearly indicates he *committed* the offense, even if the overall weight of that evidence could be diminished by possible constitutional defects that may later lead to suppression. Pretrial detention turns on dangerousness and statutory thresholds, and not on the trial-level admissibility affected by suppression of evidence.

¶ 16                                    C. Application

¶ 17    Although defendant does not challenge the circuit court's application of Section 110-6.1, we briefly apply the above framework to the facts of this case as part of our *de novo* review. The State has charged defendant with detainable offenses under 725 ILCS 5/110-6.1(a)(1) (non-probational, non-forcible felony offense), under 6.1(a)(6)(D) (unlawful possession of a firearm by a repeat felony offender), and under 6.1(a)(6)(O) (non-probational unlawful possession of weapons by a felon). Defendant does not dispute that the police recovered narcotics, a scale, two cell phones, a bundle of cash wrapped in plastic, and a loaded Taurus 9mm handgun from his vehicle. The presence of these items in defendant's vehicle, combined with several incriminating statements made by defendant (*e.g.*, claiming the shoes containing narcotics were "not his" before being told that the shoes contained narcotics) is proof enough under the statute that defendant *committed* the crime. We take no position on whether the circuit court should suppress this evidence. We are confident that the circuit court will be in a better position than we are to make that determination later in the proceedings.

¶ 18    We are also satisfied that defendant poses a threat to the community. In deciding defendant's dangerousness, the court may consider several non-exhaustive factors, including (1) whether the crime involved a weapon; (2) the history and characteristics of the defendant, including prior criminal history indicative of violent, abusive, or assaultive behavior and (3)

whether the defendant is known to possess or have access to weapons. *Id*. at (g). Here, defendant is charged with unlawfully possessing a firearm, which satisfies the first and third factors listed above. His criminal history, moreover, reveals a 1997 conviction for attempted murder, aggravated discharge of a firearm, and armed robbery, for which he received a 19-year prison sentence. While defendant's violent felonies are nearly thirty years old, his subsequent convictions for drug-related crimes in 2008, 2011, and 2013 undermine any notion of rehabilitation. It is for this latter reason, too, that no condition or combination of conditions could mitigate the threat defendant poses to the public. Defendant's criminal history spans multiple decades, with felony convictions in each. Despite knowing that he may not legally possess a firearm, he possessed one in his vehicle. Despite multiple convictions for drug possession, the State has now charged him with possession with intent to deliver. In short, defendant provides us with no reason to believe that he will now conform to the demands of the law. Moreover, defendant's residence in Cook County makes electronic home monitoring impracticable, and even if it were practical, GPS monitoring would not mitigate his access to firearms or narcotics. Other alternatives to incarceration present similar impracticalities in mitigating defendant's danger to the public.

¶ 19    Defendant will receive his opportunity to challenge the State's evidence against him. If he is successful, the state will not be able to prove him guilty beyond a reasonable doubt. At this stage of the proceedings, however, the statute requires only that the court assess his present dangerousness and the evident proof of the charged offenses. On this record, those considerations support the circuit court's decision to deny pretrial release.

¶ 20                                III. CONCLUSION

¶ 21    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 22    Affirmed.

¶ 23    JUSTICE McLAREN, specially concurring:

¶ 24    While I concur with the majority's decision to affirm the judgment of the circuit court, I write separately to voice my concerns regarding the applicable standard of review. The majority finds the standard of review in the immediate matter to be a mandatory *de novo* review and I find this to be contrary to the clear language of binding precedent. As I recently detailed in my special concurrence in *People v. Mondragon*, the clearest reading of our supreme court's decision in *Morgan* is that the manifest weight of the evidence standard applies to both the circuit court's factual findings and ultimate detention decision under section 110-6.1, but a reviewing court has the option to apply *de novo* review to the factual findings if the detention hearing proceeded solely by proffer. *People v. Mondragon*, 2025 IL App (2d) 250125-U, ¶ 18-39 (McLaren, J., specially concurring).