2026 IL App (1st) 260484-U

FIRST DIVISION
June 15, 2026

Nos. 1-26-0484B and 1-26-0530B, Consolidated

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos.  24 CR 10251 |
| | ) |     26 CR 01239 |
| | ) | |
| MICHAEL HARRIS, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the trial court's orders denying defendant's motion for relief from (a) the court's order revoking defendant's pretrial release for possession of cannabis with intent to deliver, and (b) continuing defendant's pretrial detention for unlawful possession of a weapon. The State established by clear and convincing evidence that no condition or combinations of conditions could reasonably prevent defendant from being charged with another offense or mitigate the real and present threat defendant poses to the community.

¶ 2    Defendant, Michael Harris, was on pretrial release on a charge of possession of cannabis with intent to deliver, a class 3 felony (720 ILCS 550/5(d) (West 2024)). The State filed a petition to revoke defendant's pretrial release after defendant was charged with unlawful possession of a loaded weapon/machine gun (UPW), a class X felony (720 ILCS 5/24-1(a)(7)(i), (b) (West 2024)). The State also filed a motion to deny pretrial release on the UPW charge. The

trial court revoked defendant's pretrial release on the cannabis charge and denied defendant pretrial release on the UPW charge. Defendant filed a combined motion for relief from pretrial detention on both charges. The circuit court of Cook County denied defendant's motion. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4      In July 2024, the State charged defendant, Michael Harris, with possession with intent to deliver more than 30 grams but less than 500 grams of a substance containing cannabis. On July 20, 2024, the trial court ordered defendant released from custody with conditions.

¶ 5      On January 16, 2026, the State filed a Petition for Pretrial Detention Hearing in a new case. The State's petition stated that the proof was evident or the presumption great that defendant committed the detention-eligible offense of unlawful possession of a weapon/machine gun and that defendant posed a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case. (The State also charged defendant with multiple counts of aggravated unlawful possession of a weapon and resisting a peace officer arising from the same incident.) The petition stated that police officers observed defendant walking "with his arm clamped tightly against his body." When officers approached defendant he fled to a porch where a physical confrontation ensued. During that confrontation defendant kicked an officer in the stomach, and after "scuffling with officers for a long period of time" police placed defendant into custody. Police recovered a firearm from defendant's waistband. The State's petition described the firearm as "equipped with a laser sight attachment, automatic switch, a loaded extended magazine, a live round in the chamber." The petition stated

defendant does not have a Firearm Owners' Identification (FOID) card or a Concealed Carry License (CCL).

¶ 6     The trial court held a hearing on the State's petition for pretrial detention on the UPW charge. The court found that the petition alleged a detention-eligible offense and that defendant posed a real and present threat to any person(s) or the community, and that no conditions can mitigate that risk. The Pretrial Officer informed the court that defendant had a new criminal activity score of three, a failure to appear score of four, and that his assessment coincides with supervision level one.

¶ 7     The State proffered the statements in the petition and added that when defendant became aware of the officers' presence, he "became wide-eyed," changed direction, and continued to look over his shoulder. When officers asked defendant if he had a valid FOID or CCL card, defendant fled. The police officers initiated a foot chase during which defendant's movements continued to indicate to the officers that defendant was armed: the officers observed defendant manipulating something with his right hand under his left arm. The officers caught up to defendant when defendant was trying to enter a residence. The officers grabbed defendant and felt an object they knew to be a firearm. A scuffle ensued during which defendant continued to try to grab the firearm despite orders to stop. A second person became involved and momentarily grabbed the gun. The State proffered that this person pushed a different officer down the stairs outside the residence.

¶ 8     Defendant eventually got his hand on the gun and the officers ordered him to let go. The officers struck defendant about the head and face to get him to release the firearm. The officers thought that defendant was going to cause great bodily harm to himself and/or the officers on the

scene based on the way defendant's hand was on the firearm. Defendant kicked another officer in the midsection but that officer was able to retrieve the gun from defendant. The officers who initiated the foot pursuit suffered minor contusions and lacerations to their hands and knees. The officers later determined that the gun was stolen.

¶ 9      The State also proffered defendant's criminal history, including the pending cannabis charge, one misdemeanor, and a 2023 reckless conduct with bodily harm conviction for which the trial court sentenced defendant to six months' supervision, which defendant terminated satisfactorily. The State added that in the reckless conduct case there had been a judgment on a bond forfeiture that was vacated prior to the sentence of supervision. Defendant had no juvenile adjudications.

¶ 10     After its proffer, the State argued that the proof was evident and the presumption was great that defendant committed an eligible offense and that defendant posed a real and present threat to the safety of the community at large. The State argued that the acts leading to the UPW charge occurred on a weekday at approximately 6:00 p.m. (the trial court later stated the offense occurred at approximately 8:00 p.m.), "[s]o it's prime time;" and defendant was on the public way. The State argued that defendant's flight shows that he was not willing to comply with authorities in that moment. The State contended that defendant kicked open the front door of the residence he was trying to enter. The State argued that defendant's act of repeatedly reaching for the gun was a danger to the officers and to himself because the gun could have gone off, and at least two officers received injuries during defendant's arrest. The State argued that the fact the gun had a switch to make it automatic, or essentially a machine gun, made the gun "unbelievably dangerous" because it could fire bullets at a high rate of speed and it was difficult to control

where those bullets go. The State argued that the laser sight made the gun even more dangerous, and because of the extended magazine the gun could inflict "more carnage than a regular firearm does." The State also argued that, not only did defendant not have any licensure to carry the firearm, his FOID card was actually denied.

¶ 11    The State argued that no conditions could mitigate the risk defendant posed to the community at large. The State argued that defendant was charged with UPW while already on pretrial release, showing that defendant could not follow orders. The State also argued that defendant's 2023 offense "went into judgment on bond forfeiture status before the judge granted [d]efendant six months' supervision," showing that defendant cannot comply with orders to come to court. The State argued that the two days of movement allowed under electronic monitoring would "allow him to acquire dangerous firearms," as defendant did in this case. The State asked the court to detain defendant.

¶ 12    The defense argued that "there will be fourth amendment issues with this case down the line." The defense argued that police never testified they saw defendant doing anything illegal, a weapon, or a weapon-shaped bulge; and based on what they observed, police had no reason to chase defendant. The defense argued that at the point police engaged defendant he "was free to go wherever he pleased." The defense argued that the residence defendant fled to was his home and defendant had opened the door to his residence when police "escalated the interaction." The defense contended that there were at least seven officers on the scene and at least three of them used closed fists to strike defendant about the head and face. The defense pointed out defendant's visible injuries to the trial court. The defense also argued that there was a discrepancy in the officers' accounts in that when police saw defendant walking, they believed defendant had a gun

in his armpit area but the gun was recovered from defendant's waistband. The defense argued that the State would "have a hard time addressing these issues down the line" but the defense only noted them at the time "for the record" and stated that it would be "pursuing these arguments at trial."

¶ 13    The defense argued that as for being a threat to the community defendant never displayed or discharged the weapon. The interaction did not begin with a crime being reported or a report of a person with a gun. The defense acknowledged defendant's charges for resisting but argued that it was police who "escalated what should have and could have been a completely nonviolent interaction." The defense also contended that, according to the arrest report, the officers received "no injuries, no hospitalizations." The defense argued that defendant's cannabis charge was not violent in nature and did not involve weapons, and that defendant had no felony or violent convictions. The defense argued that defendant "has never before been accused of possession of a weapon, [or] convicted of possession of a weapon, or accused or convicted of any violent offense." The defense also argued that with regard to defendant's reckless conduct conviction, the complaint indicated that defendant was charged with performing an act that *could* cause bodily harm, not that he *did* cause bodily harm. The defense argued there was nothing in defendant's background "to show that he is a real and present threat to anybody specific or to the community." The defense argued that defendant did not have a significant amount of criminal activity in his background and noted his pretrial services assessments.

¶ 14    As for conditions of release, the defense requested release on supervision level one, and argued that the State had not "proffered violations of probation or parole or some significant history of failures to appear." The defense stated that defendant had one failure to appear warrant

on the cannabis charge in February 2025, but he "has appeared on that case on every single other court date." The defense argued that one failure to appear was due to a miscommunication, and it was quashed. The defense argued defendant had not been arrested (until the UPW) or had any violations in the year-and-a-half defendant was on pretrial release on the cannabis charge. The defense argued that the State did not have "any evidence *** to show that [defendant] would not be compliant with conditions ***."

¶ 15    In mitigation the defense argued that defendant was 23 years old, a lifelong resident of Cook County, and had lived with his family at a stable address for ten years. Defendant was a high school graduate, attended church, and was employed. The defense argued that defendant had family support including from his mother, who was the second individual who came onto the porch and allegedly temporarily grabbed the firearm. The defense asked the trial court to deny the State's petition and order defendant's pretrial release.

¶ 16    In reply, the State argued that the fact defendant fled police resulting in the reckless conduct charge "just further shows that this defendant cannot comply with the authorities' orders." (The reckless conduct charge arose from an incident in which police attempted to stop a vehicle and the occupants, including defendant, fled on foot.) The State asked the trial court to grant its petition.

¶ 17    The trial court found that it was reasonable to believe that the object defendant was manipulating in his armpit as he fled police made its way somewhere into his waistband where it was ultimately found. The court stated that the facts told the court that defendant knew he had to obtain a FOID card and chose to disobey the rules. The court stated that it took note of the fourth amendment issues the defense raised because they are "important for the Court to take note of."

Regardless, "it's not going to be fully litigated [here] based on the fact that police do ultimately *** find that the defendant is in possession of this firearm. I'm going to say proof evident." The court also relied on the fact defendant did not have a FOID or CCL, was on pretrial release, and the firearm was fully automatic. The court found the State met its burden on the first prong.

¶ 18　The court also found that "it's undeniable that this defendant poses a threat to the community and to the police" based on the confrontation with police. The court specifically noted that defendant "wouldn't let go of this terrifyingly dangerous weapon knowing full well at that point, especially when he is on the ground holding it, he's caught. They're going to get it from him. And arguably, that's where the dangerousness prong comes in." The trial court stated that defendant could have been compliant but continued "fighting tooth and nail" even "when his mother gets involved, he still continues to attempt to conceal this weapon." The trial court also noted the dangerousness of the fully automatic firearm and that defendant possessed it "while not having the credentials to own any sort of firearm whatsoever." The court also found that the fact the gun was stolen and not traceable to defendant "adds to the dangerousness prong." The trial court concluded that based on all of the facts the State met its burden to establish that defendant was a danger to the community.

¶ 19　Finally, as to conditions, the trial court found that defendant had "at least twice, maybe three times," shown "that he is not really a rule follower." The court stated that electronic monitoring "is reserved for people who demonstrate nonviolence and an ability to adhere to strict conditions." The court found that there was no "evidence of such an ability in [defendant's] background." The court found that defendant's reckless conduct charge for fleeing police, defendant's judgment on bond forfeiture that was vacated, his extended flight and fighting with

police in this case while on pretrial release for a pending felony, and that defendant committed several new violations of the law, "inspires no confidence in the court that if defendant were to be placed back again on conditions of pretrial release, that he would be able to comply with them." The court found that under the circumstances, "with this extreme behavior," there are no conditions that can mitigate the risk defendant posed. The court granted the State's petition for pretrial detention.

¶ 20    On January 16, 2026, the State also filed a Petition for Revocation of Pretrial Release on defendant's cannabis charge. The January 2026 petition for revocation alleged that while on pretrial release on the cannabis charge, defendant was charged with a new felony, unlawful possession of a weapon/machine gun, and that no condition or combination of conditions of release would reasonably prevent defendant from being charged with a subsequent felony or Class A misdemeanor.

¶ 21    On January 16, 2026, the trial court granted the petition and ordered defendant detained on the cannabis charge.

¶ 22    On February 13, 2026, defendant filed a petition for pretrial release on both the cannabis charge and the UPW charge. Defendant's petition described the circumstances of his arrest for UPW similarly to the State's petition. Defendant's petition stated that the officers only observed defendant "walking *** with one of his arms not swinging freely." The defense argued that in the struggle with defendant the officers claim to have received "abrasions to their hands, and one to their hands and knees," while defendant suffered "facial lacerations, abrasions to his hands, and a black eye." Defendant's petition stated that defendant was released on pretrial monitoring, and upon information and belief "no pretrial non-compliance reports [were] ever *** filed."

1-26-0484B)
1-26-0530B) Cons.

¶ 23    Defendant's petition argued that the trial court is not required to revoke a defendant's pretrial release based on an arrest for a new charge but may instead release the defendant with or without modifications to their pretrial release conditions. Defendant argued that he is a lifelong resident of Cook County, had been employed fulltime for five months prior to his UPW arrest, and had no criminal background. Defendant noted that his pretrial services assessment placed him at a three on the new criminal activity scale and a four on the failure to appear scale and "recommended that he be released on pretrial supervision level 1." Defendant also argued that his UPW arrest "stems only from a lucky guess by the officers when they profiled [defendant] as he was walking." Defendant argued that the trial court "can absolutely fashion conditions that would allow him to fight these cases outside the confines of the Cook County Department of Corrections." Defendant asked the court to review his current detention on the UPW charge, conduct a hearing on the State's petition to revoke pretrial release on his cannabis charge, "and find that there are lesser restrictions than detention and order that he be released, on both cases, with whatever pretrial conditions [the] Court deems fit."

¶ 24    On the same day, February 13, 2026, the trial court held a hearing on defendant's petition. The defense proffered that defendant was supported by his mother and stepfather who were in court. The defense attached photographs of defendant taken at defendant's first appearance after his arrest on the UPW charge which the defense stated showed "blood vessels in his eyes that are broke, he has a black eye, scratches to his face." The defense further stated that defendant "sustained a number of bruises and scratches throughout not only his face, but down his arms, his neck, the back of his neck." The defense again argued defendant's minimal criminal background and the fact the weapon seized from defendant was not displayed or used,

and that this was defendant's first weapons related offense. The defense argued that defendant's home is "eligible for curfew or electronic monitoring if the court believes that some restrictions need to be on [defendant."] The defense stated defendant's personal background and asked the trial court to release defendant on both charges.

¶ 25    At the February 13 hearing the State argued that as officers pursued defendant they would not have known if the residence defendant approached was his residence or not; "it just would have been running towards a residence and pushing the front door open as the officers caught up to him." The State argued that the weapon seized "can be used to cause harm to the community," that defendant had been released on conditions and was in possession of the firearm, and that the officers suffered injuries resulting in the resisting charges. The State argued that defendant had "demonstrated that he's a flight risk by, again, running away from officers, trying to get into a building at that time while in possession of that firearm." The State argued that the "prongs have been met" as to the UPW charge and asked that defendant's detention status not be disturbed.

¶ 26    As for the revocation of pretrial release on the cannabis charge, the State argued that defendant committed a felony while on conditions of release and that defendant's detention should remain as to that matter as well. The defense responded that defendant's flight from police was not the "willful flight" referenced by the Pretrial Fairness Act.

¶ 27    The trial court addressed the revocation of defendant's pretrial release on the cannabis charge first and found, by clear and convincing evidence, that no conditions would reasonably prevent defendant from being charged with a subsequent felony or class A misdemeanor. The court stated that it was "not concerned about the flight," but the issue is the gun case. The court revoked defendant's pretrial release. The court also stated that with regard to the UPW charge

that "defendant should remain detained based on what's presented to the court at this time." On February 13, 2026, the trial court entered a written "Order After Revocation Hearing."

¶ 28     On March 5, 2026, defendant filed a Motion for Relief Under the Pretrial Fairness Act pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) that asked the trial court to review its February 13, 2026 decision to revoke defendant's release on the cannabis charge and to continue his detention on the UPW charge. Defendant's Rule 604 motion again argued that the trial court is not obligated to revoke pretrial release when a defendant is charged with a subsequent offense but may simply increase the conditions of release. The Rule 604 motion argued that defendant had been on pretrial release for two years prior to being charged with UPW "without any pretrial non-compliance issues, without new arrests, and without any sanctions." Defendant asked the court to consider his "ability to abide by court orders and conditions, aside from the 2026 [UPW] arrest," reconsider the revocation, and release him with conditions.

¶ 29     Defendant's Rule 604(h) motion also argued that with regard to the UPW charge the State failed to meet its initial burden, and the February 13th continuation of defendant's pretrial detention was error. Defendant's motion argued that he was not a danger to the community and there were conditions that could be imposed to ensure he is not charged with additional offenses. Defendant noted that his charge is for possession with no allegations that the weapon was used or displayed; thus, there were no specific articulable facts demonstrating that defendant was a threat to anyone. Defendant also argued that he was "profiled." Defendant asked the trial court to reconsider his continued detention on the UPW charge.

¶ 30    On March 5, 2026, the trial court held a hearing on defendant's Rule 604 motion. As in prior hearings, the defense argued that, other than one failure to appear for which a warrant was issued then quashed with no sanction imposed, defendant was compliant with his release on the cannabis charge until he was arrested for UPW. The defense recounted the events leading to defendant's arrest and made similar arguments as in prior hearings that police only saw defendant walking with his left arm not swinging freely, the officers acted on a "hunch," defendant suffered injuries during the arrest, and police recovered the gun from defendant's waistband and not under his arm. The defense argued that defendant "has demonstrated the fact that he's able to abide by the conditions of pretrial release" other than the new arrest, and the court could "fashion conditions that would allow him to fight these cases on the outside as opposed to within the confines of the Cook County Department of Corrections." The defense repeated defendant's personal history and pretrial services assessments. The defense requested pretrial release with conditions.

¶ 31    The State argued that with regard to the revocation of pretrial release on the cannabis charge, there was clear and convincing evidence that no conditions could reasonably ensure that defendant is not charged with another offense. As for defendant's continued detention on the UPW charge, the State argued that detention should continue because the proof is evident and the presumption great that (1) defendant committed detention eligible offenses, (2) defendant posed a real and present threat to the safety of any person(s) in the community based on the specific facts of the case, and (3) no condition(s) can ensure defendant's compliance. The State further argued that despite the defense's argument that defendant had no issues with his pretrial release until the arrest for UPW, defendant "did the one thing that is most egregious while on pretrial

release, which is to pick up a new case, and the case he picked up is a class X nonprobationable felony offense."

¶ 32    The State argued that as the police officers continued to try to subdue defendant outside the residence, defendant "continued to try to pull away" and "chose to remove a firearm from his person and then display that firearm in the officer's presence." Defendant did not comply with officers' commands to release the firearm. The State proffered information it reviewed on the firearm worksheet the State had received in this case. The State believed the information had not previously been proffered. The State proffered that when the gun was recovered there were 29 rounds in the extended magazine with one additional "live round." Based on defendant's actions on the day of his arrest "and his failure to comply with officers' commands and his failure to comply with this court's conditions," the State asked that defendant continue to be detained and argued that no condition(s) can mitigate defendant's risk of "picking up a new case and rearming himself with another weapon."

¶ 33    The defense conceded that its "arguments *** in response to that would be more appropriate for a fourth amendment motion." Nonetheless, the defense argued that "there is no reason to have to comply with officers that are approaching you for no reason and then chasing you up your front steps for no reason." The defense repeated that the officers were acting on a "hunch" and that the weapon was recovered from defendant's waistband.

¶ 34    The trial court stated that it would not be determining the legality of the officers' actions in approaching defendant because there was "no fourth amendment or Article I section 6 violation that's alleged, at least formally." The court found the proffers inconsistent as to whether the gun "had to be removed off the defendant [or] whether or not he pulled it out and

displayed it." But the court noted that "it does appear that this is a fully automatic weapon with 29 live rounds." The court found that the proof was evident and the presumption great that defendant committed a detainable offense.

¶ 35    The trial court found that a condition of defendant's pretrial release for the cannabis charge would have been not to possess any firearms or commit any new offenses but it is alleged that he did so. The court found that it believed defendant "has in fact committed a felony offense while he was released." The court found that the fact defendant armed himself with this weapon despite being unable to do so with the proper licenses and being prohibited from possessing any weapons legally while on pretrial release "indicates to me that he is in fact a danger to the community in general." The court found that no condition(s) could mitigate the threat to the public. The court denied the motion for relief as to both charges.

¶ 36    On March 5, 2026, defendant filed a notice of appeal. "The motion for relief will serve as the argument of the appellant on appeal. The appellant may file, but is not required to file, a memorandum ***. Issues raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). On May 5, 2025, defendant filed a Notice in Lieu of Rule 604(h) Memorandum stating that defendant elected to stand on the arguments in the motion for relief filed in the trial court. On May 8, 2026, this court granted the State's motion for leave to file its memorandum in response to defendant's appeal *instanter*.

1-26-0484B)
1-26-0530B) Cons.

¶ 37 This appeal followed.[1]

¶ 38                                ANALYSIS

¶ 39 This is an appeal from the denial of a motion under Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) for relief from a revocation of pretrial release pursuant to section 110-6(a) of the Code (725 ILCS 5/110-6 (West 2024)) and for relief from continued pretrial detention pursuant to section 110-6.1(i-5) of the Code (725 ILCS 5/110-6.1(i-5) (West 2024)). Where, as in this case, the proceedings on a revocation of pretrial release involve only the parties' proffers and documentary evidence, our review is *de novo. People v. Rios*, 2025 IL App (1st) 250950, ¶ 25 (citing *People v. Morgan*, 2025 IL 130626, ¶ 51). Similarly, in an appeal from a denial of pretrial release upon review of a pretrial detention order pursuant to section 110-6.1(i-5) that is based on the parties' proffers and documentary evidence with no live testimony, our review is *de novo. People v. Phelps*, 2025 IL App (1st) 251777-U, ¶ 24 (citing *Morgan*, 2025 IL 130626, ¶ 54).

¶ 40                              1. Legal Standards

¶ 41 A petition to revoke pretrial release requires the State to prove different elements than a petition to deny or continue the denial of pretrial release. See *People v. Hill*, 2025 IL App (4th) 250010, ¶ 23. In pretrial detention proceedings, initially,

> "[t]he State must file a verified petition requesting the denial of pretrial
>
> release. [Citation.] The State then has the burden of proving by clear and

---

[1] This court docketed separate appeals under the circuit court case numbers for the cannabis charge and the UPW charge. On April 14, 2026, defendant filed a motion to consolidate the two appeals, which this court granted.

- 16 -

convincing evidence (1) the proof is evident or presumption great that defendant committed a detainable offense; (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk; and (3) no conditions could mitigate this threat or risk of flight. [Citation.] At each subsequent appearance of the defendant before the court, the statute requires the court to find only that 'continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution.' [Citation.]

'Although this determination necessarily entails consideration of the threat or flight risk posed by a defendant and the potential mitigation of such threat or flight risk by conditions of release, the Code does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing.' [Citation.]" *People v. Rice*, 2025 IL App (3d) 250262, ¶ 11; *People v. Harris*, 2024 IL App (2d) 240070, ¶ 41.

¶ 42    The requirements the State must prove to revoke pretrial release are different; "[w]hen a defendant has previously been granted pretrial release under this Section for a felony or Class A misdemeanor, that pretrial release may be revoked only if the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release after a hearing on the court's own motion or upon the filing of a verified petition by the State." 725 ILCS 5/110-6(a) (West 2024).

"[S]ection 110-6(a) contains no corresponding language that, in order to revoke the release, the State must prove that a defendant *committed* a felony or Class A misdemeanor while on pretrial release. Rather, *** the plain language of section 110-6 requires only that a defendant be '*charged* with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release.' [Citations.]" (Emphases added.) *People v. Hammerand*, 2024 IL App (2d) 240500, ¶ 19.

¶ 43    "During the hearing for revocation, the defendant shall be represented by counsel and have an opportunity to be heard regarding the violation and evidence in mitigation. The court shall consider all relevant circumstances, including, but not limited to, the nature and seriousness of the violation or criminal act alleged." 725 ILCS 5/110-6(a) (West 2024). Where a defendant is charged with a felony "alleged to have occurred while on pretrial release this alone is sufficient to support a revocation of pretrial release." *Hammerand*, 2024 IL App (2d) 240500, ¶ 19.

¶ 44                              2. Continued Detention for UPW

¶ 45    Based on our *de novo* review, we find, based on the specific, articulable facts of this case, that defendant's continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community. *Harris*, 2024 IL App (2d) 240070, ¶ 41, *People v. Stokes*, 2024 IL App (1st) 232022-U, ¶ 36. As noted above, defendant's Rule 604(h) motion argued that the State failed to satisfy its initial burden under section 110-6.1(e) (725 ILCS 5/110-6.1(e) (West 2024) (listing three prongs State must prove to deny a defendant pretrial release)). The State's memorandum in response to defendant's appeal argued that defendant "made no argument at all in support of this allegation, waiving the claim." Defendant's Rule 604(h) memorandum only argued that defendant is not a danger to any person(s) or the community and

that there are conditions of pretrial release that can mitigate the possibility of defendant being charged with any additional offenses. Forfeiture aside, we review the motion *de novo*, and the question in a proceeding under section 110-6.1(i-5) is "whether new information *** suggests that the initial detention is no longer necessary." *People v. Sanders*, 2025 IL App (1st) 251811-U, ¶ 46. Before a court may continue detention after the initial pretrial detention hearing, "the court must find that 'continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution.' 725 ILCS 5/110-6.1(i-5) (West 2024)." *Id.* ¶ 45. We will limit our *de novo* review of defendant's Rule 604(h) motion to those questions.

¶ 46    Defendant's Rule 604(h) motion argued that defendant "is not a danger to the community and there are sufficient safeguards that can be imposed *** to ensure that he does not pick up any additional cases." Defendant argued that he is not a threat to the community because the specific articulable facts of this case were that "there was no brandishing or using [of] this firearm" and defendant was chased "for merely walking in a way that seemed suspicious to the officer." Defendant did not refute the dangerousness of the weapon or that he was in possession of a dangerous weapon. Defendant's arguments focused primarily on the legality of the officers' conduct in attempting to stop and then pursuing and subduing defendant.

¶ 47    The State responded that defendant's conduct of carrying a concealed, loaded firearm in public "presumptively pose[d] a safety threat." The State argued that defendant's conduct was made "even more dangerous" by the fact "defendant turned and fled when police asked him whether he had a valid FOID or CCL," then fought with police when they tried to recover the

firearm. The State argued that this case is similar to *People v. Binion*, 2024 IL App (2d) 240502-U, which recognized that "[a] *loaded* firearm is inherently dangerous." (Emphasis in original.) *Id*. ¶ 24. In *Binion*, the court found that the trial court's dangerousness finding was not against the manifest weight of the evidence where the defendant in *Binion*, similarly to defendant in this case, "carried a hidden loaded firearm with ammunition in the chamber, had extra rounds of ammunition on his person, and lacked a valid FOID card." *Id*. The State also argued that it was not necessary for defendant to have brandished the weapon to find that defendant posed a safety threat. The State cited *People v. Johnson*, 2024 IL App (1st) 240154, ¶ 20, in which this court rejected a similar argument that the defendant did not pose a real and present threat because he was not charged with using the firearm he possessed in a violent or threatening manner. This court found that argument failed because it ignored guidance from decisions of the court that "acknowledged the danger of firearm possession *under any circumstances* by an individual legally barred from doing so." (Emphasis in original.) *Id*.

¶ 48    We do not reach the question of whether defendant's "fourth amendment arguments" may prove to be a valid defense because the existence of a defense to a charge is not the issue when addressing a defendant's continued pretrial detention. *People v. Frye*, 2025 IL App (2d) 250381-U, ¶ 15 ("under section 110-6.1, a defendant may be detained when the evidence clearly indicates he committed the offense, even if the overall weight of that evidence could be diminished by possible constitutional defects that may later lead to suppression. Pretrial detention turns on dangerousness and statutory thresholds, and not on the trial-level admissibility affected by suppression of evidence" (emphasis omitted)). On the material issue in this appeal, we find that the evidence is clear and convincing that defendant's unlawful possession of this

particular firearm, capable of fully automatic fire and of being loaded with an extended amount of ammunition, posed a threat to the community. See *People v. Vance*, 2024 IL App (1st) 232503, ¶ 23 ("We are only commenting on the conduct as alleged in the State's proffer, as we are charged to do. [Citation.] But based on that proffer, the highly destructive nature of the firearm defendant possessed, [a handgun capable of fully-automatic fire by means of a 'switch' on the gun, which the court stated was 'bad enough' alone,] *** takes this case far beyond an ordinary case of gun possession."). We agree that possession of any firearm in public by a person who is not legally authorized to possess a firearm in public by having a valid FOID card and CCL is an additional threat to the community. See *Guns Save Life, Inc. v. Kelly*, 2025 IL App (4th) 230662, ¶ 34. In *Kelly*, the court found that,

> "the purpose of the FOID Act is 'to promote and protect the health, safety and welfare of the public' by establishing a system through which persons who are prohibited from acquiring and possessing firearms and firearm ammunition can be identified by law enforcement. [Citation.] The objective criteria used to deny applications for a FOID card are clearly aimed at preventing the possession of firearms by those whose firearm use is likely to pose a danger to the public ***."
> *Id*. (quoting 430 ILCS 65/1 (West 2022)); *People v. Burns*, 2024 IL App (4th) 230428, ¶ 33 (the purpose of the CCL law is to allow "qualified" individuals to obtain licenses to carry concealed handguns in public—including the requirement to "have completed firearms training") (citing 430 ILCS 66/25(1), (2), (6) (West 2022)).

¶ 49    Defendant's possession of a very dangerous firearm at a time when defendant was affirmatively prohibited from possessing a firearm and did so anyway further heightened the threat to the community because defendant knew he was in violation and would act more aggressively to conceal his unlawful possession. Defendant's conduct during the arrest demonstrated this dangerousness. The specific facts of this case were that during a physical confrontation with several police officers, and with a third party civilian present who also happened to be his mother, defendant still tried to conceal the weapon; and when he could not, defendant still tried to get his hands on the gun. Even if defendant was resisting police because he thought their conduct was unlawful, grabbing the gun during the struggle could have resulted in an accidental discharge which, if the gun got switched to "fully automatic," would have certainly caused great bodily harm or death to an officer or a person or persons in the community. The fact that defendant was capable of engaging in this type of behavior demonstrated his continued dangerousness to the community.

¶ 50    We also find that continued detention is necessary to avoid defendant's real and present threat to the safety of any person or persons or the community. The State's response argued that the trial court "had ample evidence for concluding that there are no limiting conditions that can mitigate defendant's safety threat." That evidence included defendant's flight in this case as well as his flight from police related to his 2023 conviction for reckless conduct, defendant's scuffle with police in this case, and defendant's commission of UPW while on pretrial release. The State also argued that defendant demonstrated that "he knows the rules but chose to violate them" when defendant armed himself despite being denied a FOID card. The State argued the facts

were sufficient to show that there are no conditions that can mitigate defendant's safety threat to the public "short of detention." We agree.

¶ 51 Electronic monitoring (EM) cannot prevent defendant's movement; it can only monitor it. *People v. Hernandez*, 2024 IL App (1st) 241223-U, ¶ 30. Defendant would have limited free movement on EM during which defendant could arm himself again. Defendant demonstrated his unwillingness to abide by conditions of pretrial release and the law when he carried a loaded handgun in public in violation of his pretrial release and without a FOID card or CCL. Defendant demonstrated that despite being on conditions of release he will act dangerously and without regard to the safety of others if confronted. 725 ILCS 5/110-5(a)(3)(B) (West 2022) ("In determining which conditions of pretrial release, if any, will reasonably ensure the *** safety of any other person or the community *** the court shall *** take into account *** whether, at the time of the current offense *** the defendant was on *** other release pending trial ***"); 725 ILCS 5/110-6.1(g)(7), (g)(8) (West 2024) (listing factors to be considered in making a determination of dangerousness). We find that there are no less restrictive conditions than confinement that can mitigate the real and present threat defendant posed to the community. Therefore, we find that the trial court properly denied defendant's petition for release on the UPW charge.

¶ 52                     2. Revocation of Release for Delivery of Cannabis

¶ 53 Defendant's Rule 604(h) motion argued that based upon defendant's "demonstrated ability to abide by court orders and conditions, aside from the 2026 arrest," he should be released on pretrial conditions. The State argued that defendant's conduct leading to the UPW charge demonstrated that defendant "will not comply with pretrial conditions" and that "conditions like

curfew or EM are unlikely to prevent defendant from committing another felony or Class A misdemeanor." The State also argued that the facts demonstrated that the "release with conditions had no deterrent impact at all and *** suggests [defendant] could commit other offenses if released from detention.

> "When the State files a petition to revoke pretrial release, it is obligated to prove first that the defendant was charged with a felony or Class A misdemeanor while on pretrial release. [Citations.] Next, the State must prove, by clear and convincing evidence, that no conditions would reasonably ensure the defendant's appearance at later hearings or prevent him or her from being charged with a subsequent felony or Class A misdemeanor. [Citations.]" *People v. Tapia-Ayala*, 2025 IL App (2d) 250424-U, ¶ 22.

¶ 54 Defendant's charge for UPW while on pretrial release is enough to support revocation of defendant's pretrial release on the cannabis charge. *Hammerand*, 2024 IL App (2d) 240500, ¶ 19. Additionally, we find that no conditions of release would reasonably prevent defendant from being charged with a subsequent felony or Class A misdemeanor. We have considered defendant's evidence in mitigation including his long-time residency, employment, and family support. We find the evidence in mitigation insufficient to overcome defendant's conduct leading to the UPW charge. We find that defendant demonstrated his inability to abide by conditions of release and willingness to commit further offenses. Moreover, in determining whether to revoke pretrial release, the "court shall consider all relevant circumstances, including *** the nature and seriousness of the violation or criminal act alleged." 725 ILCS 5/110-6(a) (West 2022). We find that defendant egregiously defied his conditions of release when defendant armed himself with a

highly dangerous weapon then heightened that danger by his actions when confronted by police. We also find that EM would not prevent the occurrences that led to defendant's subsequent felony charges. Therefore, we find that the State established by clear and convincing evidence that no conditions(s) would reasonably prevent defendant from being charged with a subsequent felony or Class A misdemeanor. The trial court properly revoked defendant's pretrial release on the cannabis charge.

¶ 55                                    CONCLUSION

¶ 56    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 57    Affirmed.