2026 IL App (2d) 260137-U
No. 2-26-0137
Order filed June 29, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, | Appeal from the Circuit Court of Kane County. |
| v. | |
| TAVIEON P. HOLMAN, Defendant-Appellant. | Honorable Salvatore LoPiccolo, Judge, Presiding. No. 25-CF-857 |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's order granting the State's motion to "revoke" release is affirmed, where defendant was not on release but was ordered to attend a residential treatment program and for a warrant to issue if he left that program; the motion served only to notify the court that defendant should return to the originally ordered detention. Affirmed.

¶ 2    On June 18, 2025, the circuit court granted the State's motion to deny defendant, Tavieon P. Holman, pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), as amended by Public Act 101-652 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of Public Act 101-652 (eff. Jan. 1, 2023)). On March 4, 2026, the court denied defendant's motion for relief. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). He appeals, and we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On April 21, 2025, defendant was charged with residential burglary (720 ILCS 5/19-3 (West 2024)), theft of stolen property not exceeding $500 (with a prior conviction) (*id.* § 16-1(a)(4)), and theft of stolen property not exceeding $500 (*id.* § 16-1(a)(4)(B)).

¶ 5      On June 18, 2025, the State petitioned to deny defendant pretrial release, arguing that his pretrial release posed a real and present threat to the safety of any person or the community. 725 ILCS 5/110-6.1(a)(1.5), (a)(6) (West 2024). The State referenced defendant's criminal history, including prior convictions for robbery, possession of a weapon by a felon (three years in the Illinois Department of Corrections (IDOC)), resisting a peace officer (one year in IDOC), and burglary (probation). Further, the State attached the police synopsis from the events giving rise to the present charges. After a hearing, the court granted the State's petition, noting that defendant posed a threat of safety to the victim of the residential burglary, as well as the community, since he was knocking on doors throughout the apartment complex before randomly choosing the victim and accessing the apartment via a balcony.

¶ 6      The record reflects that the parties were scheduled to re-appear on August 18, 2025. On that date, defendant apparently presented the court with a letter from the Ecker Center for Behavioral Health, reflecting that he had been accepted into a three-week residential treatment program. The record contains no transcript from the hearing, but it contains two written orders dated August 18, 2025. The first order states: "defendant to be released instanter on this file only", "defendant is to *only* be released to the Ecker Center for his treatment program"; "the Ecker Center is given permission to contact Adult Court Services about the defendant"; and "[next court date] is for status of the defendant's treatment program and status of *his detention*." (Emphases added.)

The second order states, "if defendant is to leave treatment before completion[,] then *a warrant will immediately issue*." (Emphasis added.)

¶ 7    A few weeks later, on September 13, 2025, the court entered an order reflecting that: (1) defendant failed to appear in court, (2) he was "terminated from the Ecker [C]enter program and was told to come to court today to address *his custody status*. Defendant did not appear," and (3) the court therefore ordered a "Violation of Pretrial Release Conditions of Warrant." (Emphasis added.) Accordingly, a warrant issued, reflecting that defendant should be held for a violation of pretrial release conditions hearing.

¶ 8    In December 2025, defendant filed a motion to quash the warrant, requesting the court to "end everything" so he could "get on with [his] life." Defendant did not appear in court on the date he noticed up his motion, so the court denied the motion and continued the warrant for defendant's apprehension.

¶ 9    On February 25, 2026, defendant was apprehended and remanded to custody. That same day, the State moved to "revoke" defendant's pretrial release. At a hearing on the motion, defense counsel noted that the Code provides that pretrial release may be revoked only if defendant committed another crime while on pretrial release (725 ILCS 5/110-6(a) (West 2024)). The State, however, likened the court's August 18, 2025, orders to a "furlough" from detention, as defendant's release was explicitly conditioned upon him being *only* at the Ecker Center and, if he were to leave treatment, a warrant would immediately issue. The court agreed with the State, noting that defendant was initially ordered detained, based on the circumstances of the case, and was released only to the Ecker Center for treatment. Defendant then violated that order. The court acknowledged that, in order to revoke release, the Code requires the State to establish the defendant committed another misdemeanor or felony while on release. However, it continued, "I am looking

at this as this was a furlough and once the furlough was obliterated by the defendant, *** the only option he has is to report to the jail and place himself back in jail because there is [*sic*] no other orders in [ ] effect." Thus, the court concluded, whether the State's motion was considered a petition to revoke or one for sanctions (noting that, if it was one for sanctions, the court would order defendant detained for 30 days), it was revoking the August 18, 2025, orders, such that defendant was no longer allowed to go to the Ecker Center and his only other option was to return to custody. On February 26, 2026, a written order was entered.

¶ 10 On March 2, 2026, defendant filed a motion for relief. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). Defendant first represented that, on February 26, 2026, the court revoked his pretrial release. In one paragraph regarding the "revocation," defendant added that the State failed to prove that he was charged with a new felony or Class A misdemeanor. In addition, defendant argued generally that he should not have been detained in the first place, because the State failed to meet its burden of establishing that: (1) he committed the charged offenses, (2) he posed a real and present threat of safety to any person or the community (and the court's finding that he was a danger to the alleged victim and anyone he resides with was against the manifest weight of the evidence), and (3) no condition or combination of conditions could mitigate the threat he posed to any person or the community (and the court erred in finding that no condition or combination of conditions would mitigate the risk of his release).

¶ 11 On March 4, 2026, the court held a hearing on the motion for relief. At that time, defense counsel rested on the motion but elaborated solely on the argument that, regarding the revocation, the State failed to prove that he committed a new felony or Class A misdemeanor. Counsel argued that the court erred, where it interpreted the orders allowing defendant to attend treatment at the Ecker Center as merely a "furlough" from detention. Rather, counsel argued, the court should

- 4 -

have interpreted those orders as releasing defendant from detention; therefore, in order for that release to be revoked and for defendant to be returned to custody, the Code required that a new offense be charged. Defense counsel requested that the motion for relief be granted because there was no new offense presented as a basis for revoking defendant's release. Further, he noted that neither August order included the word "furlough," and the trial court intended that, after the treatment at the Ecker Center, defendant's detention status would be re-addressed.

¶ 12 The State pointed out that the two August 18, 2025, orders were akin to a furlough from detention, in part because the court never reassessed statutory factors or the propriety of defendant's detention in order to release him. Rather, the court simply gave defendant an opportunity to attend treatment outside of detention and, when defendant did not appear at the next court date, a warrant issued to bring defendant "back into custody because he should have still been in custody" from his initial detention. The State's petition to "revoke" was a method to "double down" on the fact that defendant was on a furlough and should have never, if he was not in treatment, been out of detention.

¶ 13 The court agreed with the State, finding "I interpret it as a furlough as well." The court continued that the orders reflected that, when defendant did not meet the conditions of the release by being at the Ecker Center for treatment, he was to return to custody. The March 4, 2026, written order reflects that the motion for relief was denied, finding "the defendant was on a furlough when he went on warrant status and was not released from custody. Therefore, the defendant's motion for relief is denied." No other bases for relief were discussed or addressed at the hearing, nor in the court's order denying the motion.

¶ 14 On March 18, 2026, defense counsel represented that defendant had been approved to re-enter the Ecker Center program. Counsel requested that defendant be released to go to the Ecker

Center and that a bed would be available in the next week. The State objected and responded that the court "already did this song and dance," resulting in defendant being on warrant status from September 2025 until almost March 2026. The court decided to briefly continue the case until March 24, 2026, for some "proof" that defendant had again been accepted by the Ecker Center.

¶ 15    Before the next date, however, defendant appealed. Specifically, defendant's March 19, 2026, notice of appeal (completed with the assistance of counsel) identifies the relevant orders regarding pretrial release as February 26, 2026 (granting the State's motion for "revocation"), March 4, 2026 (denying defendant's motion for relief), and March 18, 2026 (continuing defendant's motion to be released to Ecker Center). Further, for the "nature of order appealed," defendant did *not* check the box signifying "denying pretrial release." Rather, defendant checked only the box signifying the order appealed was one "revoking pretrial release."

¶ 16    On March 20, 2026, the Office of the State Appellate Defender (OSAD) was appointed to represent defendant on appeal. On May 14, 2026, OSAD again noted that the order being appealed was entered on February 26, 2026, defendant's motion for relief was denied on March 4, 2026, and that it otherwise declined to file a memorandum pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024). The State has submitted a memorandum opposing defendant's appeal.

¶ 17                                    II. ANALYSIS

¶ 18    Preliminarily, we define the scope of this appeal. We will not consider whether the court's June 18, 2025, initial detention decision was proper. Although defendant's motion for relief raised that issue, it did so in generic fashion, with broad assertions, no citations to the record, and no analysis. Moreover, at the hearing on the motion for relief, defendant did not elaborate on his assertion that the initial detention decision was improper. Instead, the parties and court discussed

only the purported revocation of release, and the court denied the motion for relief citing only that basis. Finally, the notice of appeal lists three orders relevant to the appeal, but none is the June 18, 2025, initial detention decision. The notice describes the nature of the appeal as one challenging revocation of release, *not* the court's denial of release. In the declination letter, OSAD reiterates that the order being appealed was entered on February 26, 2026 (*i.e.*, not June 18, 2025). "The purpose of requiring the appellant's memorandum (when one is filed) or motion for relief (when a memorandum is not filed) to contain detailed arguments is *** to prohibit just such conclusory argument in pretrial-release appeals." *People v. Hood*, 2026 IL App (1st) 260117-U, ¶ 13. Indeed, a motion for relief serves more than one purpose, one of which is to "crystalize[ ] and frame[ ] the issues for appeal." *People v. Patterson*, 2025 IL App (1st) 250510, ¶¶ 18-19. When, as here, defendant declines to file a memorandum on appeal, the motion for relief serves as his or her appellate arguments and, thus, "must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities." See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Here, we have no detailed arguments concerning the initial detention decision. Thus, we will consider only the argument in the motion for relief that the alleged revocation of release was improper. As we will not serve as defendant's advocate or create arguments for him out of whole cloth, all other arguments are deemed forfeited. See *People v. Inman*, 2023 IL App (4th) 230864, ¶ 13; *Hood*, 2025 IL App (1st) 260117-U, ¶ 13.

¶ 19    Thus, we turn to the February 26, 2026, order. Although defendant explicitly identifies it as the subject of his appeal, the State fails to analyze its propriety, dedicating its memorandum instead to defending the initial detention decision. Accordingly, and given that OSAD filed a declination letter, we are left to resolve the primary issue on appeal without any meaningful

assistance from the parties. This is not particularly surprising. Even before the parties filed the declination letter and memorandum, this court noticed that we were not in receipt of potentially relevant information. Namely, after we were asked to grant multiple motions to supplement the record, we discovered that the circuit court had, as alluded to in the record, ultimately entered an order on March 24, 2026, placing defendant on electronic home monitoring (EHM) to attend treatment at the Ecker Center. Given that release on EHM might render moot an order from this court reversing detention, the Clerk of the Court contacted OSAD and the State, to query whether they had spotted this potential issue. In response, in an email dated May 13, 2026, OSAD explained that the court's March 24, 2026, order released defendant on EHM *only* to the Ecker Center for treatment, he is not allowed to the leave the facility, his movements are confined the facility, and he must return to the sheriff's office upon completion of treatment. As such, defendant's position was that he was not "actually ordered released." Therefore, OSAD opined, the appeal is not moot.

¶ 20 Setting aside mootness, OSAD's position reflects contradiction, as defendant seemingly wants it both ways. On the one hand, he argues that his August 2025 release solely to the Ecker Center for treatment, with a warrant to issue if he left treatment, constituted a "release" from pretrial detention as contemplated by the Code, such that revocation of that release could not be achieved without the State establishing he committed a new offense. (Again, arguments that the State does not respond to on appeal). On the other hand, he contends that his current release to the Ecker Center, again, only for treatment and with his ordered return to the sheriff's office when treatment is completed, is *not* actually a "release." We acknowledge that defendant is now on EHM, but in all meaningful respects the court again essentially ordered the same thing: defendant may leave jail detention only to reside at the Ecker Center and may not simply leave treatment

- 8 -

without either an arrest warrant issuing or returning to the sheriff's custody. In other words, defendant has not been, and never was, released. However, even setting aside the court's most recent March 24, 2026, order and OSAD's emailed position in regards thereto (since they are technically not in the official record before us), we conclude that the circuit court did not err in its February 26, 2026, order. Our review is *de novo*. See, *e.g.*, *People v. Harris*, 2026 IL App (1st) 260484-U, ¶ 39.

¶ 21 Defendant argued below that revoking his release was improper because the State failed to establish that he committed a new crime while on release. Indeed, the Code provides, "[w]hen a defendant has previously been granted pretrial release *** that pretrial release may be revoked only if the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release ***." 725 ILCS § 5/110-6(a) (West 2024). However, the two August 18, 2025, orders reflect that defendant did *not* suddenly and without reassessment of the Code's detention factors *receive* pretrial release. Again, on June 18, 2025, after a hearing where the court considered the relevant factors in the Code and circumstances of this case, the court initially ordered defendant detained based on the dangerousness factor. Shortly thereafter, but with no apparent reconsideration of the factors relevant to a detention decision or pretrial release conditions (again, no transcript from the August 18, 2025, hearing is present in the record on appeal) (see 725 ILCS 5/110-5 (West 2024) (identifying the factors a court *must* consider when determining conditions of pretrial release)), the court allowed defendant the opportunity to attend a residential treatment program, with a warrant for his arrest to issue should he leave that treatment facility. In other words, defendant was allowed to reside in a treatment center instead of jail. When defendant left treatment early, the promised warrant issued. The hearing arguments reflect that, despite titling its motion one for "revocation" of release, the State's purpose in the

motion was to return defendant to the detention as originally ordered, as he had violated the court's order allowing him to reside elsewhere during treatment. The State likened the court's August orders to a "furlough," *i.e.*, a period to leave detention from the correctional facility to instead remain housed in a residential treatment facility. We agree. Although the record reflects inartful references to revocation or release with conditions, that struggle stems from the fact that the Code does not specifically provide for the scenario occasioned here. However, the record clearly establishes that defendant was not "released" from detention; to the contrary, a warrant was to issue if he left the facility. Defense counsel argued that, *after* treatment, the court was to reassess defendant's detention status. Yet, this is irrelevant because defendant *left* treatment and, therefore, the circumstances of the original detention had not changed.

¶ 22    In sum, we agree with the court's assessment that, in this case, the opportunity for residential treatment did not represent a release from detention, such that section 110-6(a)'s revocation-of-release requirements were triggered. Rather, the State's motion was simply an avenue for bringing to the court's attention that, given the August orders and defendant's violation thereof, the court should return defendant to jail, as previously ordered.

¶ 23                                    III. CONCLUSION

¶ 24    For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 25    Affirmed.